**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**George Clinton ETHERIDGE,
Defendant–Appellant.**

No. 90–5835.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 8, 1991.

Decided April 30, 1991.

Paul Henderson Ray, Virginia Beach, Va., for defendant-appellant.

Laura Marie Everhart, Asst. U.S. Atty., argued (Henry E. Hudson, U.S. Atty., on brief), Norfolk, Va., for plaintiff-appellee.

Before HALL and CHAPMAN, Circuit Judges, and MULLEN, District Judge for the Western District of North Carolina, sitting by designation.

CHAPMAN, Circuit Judge:

Following a jury trial, appellant was convicted of one count of being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Appellant's sentence was enhanced under 18 U.S.C. § 924(e)(1) because he had previously been convicted of at least four violent felonies.[1] Appellant appeals his conviction and enhancement of sentence and claims that the trial judge erred (1) in excluding evidence that he had relied upon judicial advice given to him by a state court judge that he could continue to possess shotguns for hunting purposes, (2) that the predicate offenses relied upon to enhance his sentence were more than 20 years old at the date of sentence and violated the *ex post facto* clause, and (3) that since his civil rights had been restored by the Commonwealth of Virginia it was not unlawful for him to possess a firearm. We find no merit in these exceptions, and we affirm.

I

On March 27, 1990, agents of the Bureau of Alcohol, Tobacco and Firearms obtained and executed a search warrant for the home of appellant, George Clinton Etheridge, located in Chesapeake, Virginia. The validity of the search warrant is not challenged. Appellant was present at the time the search was conducted, and after receiving proper Miranda warnings, he advised the agents that he owned two shotguns and the guns were located in the back room of the residence. The shotguns were found at the place indicated by appellant and they

---

1. Only three such convictions are necessary for enhancement under the statute.

were seized. The agents also seized 197 rounds of ammunition. It is undisputed that the firearms were manufactured outside the Commonwealth of Virginia and had traveled in interstate commerce.

A written stipulation was entered into between the United States and the defendant in which the defendant admitted that he had four prior violent felony convictions: November 16, 1956 in the Circuit Court for the City of Chesapeake, Virginia of voluntary manslaughter; July 29, 1964 in the Circuit Court for the City of Chesapeake, Virginia of unlawful shooting; July 28, 1967 in the Circuit Court for the City of Chesapeake, Virginia of second degree murder; and September 13, 1983 in the Circuit Court for the City of Virginia Beach, Virginia, of unlawful wounding, and use of a firearm in the commission of a felony. All of these convictions were for violent felonies and punishable by imprisonment for terms exceeding one year.

Prior to trial, the United States filed a motion in limine to prevent the appellant from introducing evidence including his Virginia hunting license, photographs of his hunting dogs, defense witnesses attesting to the fact that the two shotguns were only used for hunting, and the defendant's claim that he had relied upon advice by a state court judge that he could continue to possess the two shotguns for hunting despite his prior felony convictions. On the issue of the judicial advice given to him, Etheridge presented only a certified copy of a warrant for his arrest on a charge of carrying a concealed weapon on his person after having been convicted of a felony involving the use of a firearm. This warrant had been dismissed April 3, 1985 with the words "Nolle Prosequi" written on the back of the warrant. The district court granted the government's motion and excluded the evidence. The court found that this proffered evidence was irrelevant and did not present a valid defense to the charges contained in the indictment, because the evidence related only to his use of the firearms while the statute only required proof of possession.

## II

Appellant claims that he was entitled to rely upon the affirmative advice of a state trial judge that he could use the firearms for hunting purposes only, and that his conduct had conformed to the state judge's statement of the law. He claims that he could have proved conformance by four witnesses, who had been subpoenaed and who would have testified that he used the firearms only for hunting, but the court excluded this evidence in response to the motion in limine. Etheridge asserts that the due process clause allows such a defense, and he relies upon *United States v. Brady*, 710 F.Supp. 290 (D.Colo.1989), and *United States v. Tallmadge*, 829 F.2d 767 (9th Cir.1987). We do not find these decisions persuasive. In *Tallmadge*, the defendant had been told by a federally licensed firearms dealer that he could purchase firearms, despite his prior conviction of a felony possession of a machine gun, after that charge had been reduced under California law to a misdemeanor. The court found that Tallmadge had been misled by the representations of the federally licensed firearms dealer and the court adopted a theory of entrapment by estoppel over a very persuasive dissenting opinion. In *Brady*, a state judge had advised the defendant that he could "utilize a firearm specifically for hunting and trapping within the confines of his occupation." Brady's federal charge was for possession of a firearm known as a "Coyote Getter," which is not fired by an individual, but fired by a baited coyote trap. The weapon is buried under the bait and when the animal bites the bait, this trips a firing mechanism which propels a cyanide capsule into the animal's mouth. The court found that it would be a violation of due process to convict Brady in light of the fact that his conduct conformed to the state judge's advice as to the law. *Brady* relied heavily upon *Cox v. Louisiana*, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965), and *Raley v. Ohio*, 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959). These two cases involved the reliance of a defendant charged with the violation of state law upon a prior

interpretation of state law by a state official.

We find the reasoning of *United States v. Bruscantini*, 761 F.2d 640 (11th Cir.), *cert. denied*, 474 U.S. 904, 106 S.Ct. 271, 88 L.Ed.2d 233 (1985), more persuasive. Bruscantini had entered a nolo contendere plea to a Florida burglary charge. The state judge had withheld adjudication of guilt and placed him on probation, and he contended that the state judge and the state prosecutor told him that his case did not constitute a conviction. Eight years later he obtained two firearms and was subsequently charged with violating 18 U.S.C. § 922(b) as a convicted felon receiving the firearms. He argued that *Cox* and *Raley* allowed him to reasonably rely upon the interpretation of the law given to him by authoritative state officials, and that the government was estopped from prosecuting him.

The Eleventh Circuit held:

The facts of this case do not warrant application of the rule of *Cox* and *Raley*. Here, while state officials provided the interpretation upon which appellant relied, federal officials indicted and convicted him for a violation of federal law. On the other hand, in both Supreme Court decisions, state officials had interpreted state law and subsequently convicted the defendants under that law. This distinction is important here, particularly where the analysis of the federal law, § 922, does not depend on state practice, *see Dickerson v. New Banner Institute, Inc., supra* [460 U.S. 103, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983) ], and where knowledge of one's status as a convicted felon is not an element of the offense of receiving firearms. *See U.S. v. Goodie*, 524 F.2d 515 (5th Cir.1975), *cert. denied*, 425 U.S. 905, 96 S.Ct. 1497, 47 L.Ed.2d 755 (1976).

The rule of *Cox* and *Raley* is a narrow exception to the general principle that ignorance of the law is no defense. It was prompted by the Court's observation that permitting the government to prosecute individuals who reasonably rely upon that government's interpretation of the law would constitute a kind of entrapment. Where, however, the government that advises and the government that prosecutes are not the same, the entrapment problem is different. Moreover, if one benefit of the estoppel defense is that it encourages government officials to better know and articulate the law, that benefit is not present where application of the defense would penalize the wrong government—the government that prosecuted appellant rather than the government that mistakenly and misleadingly interpreted the law. Appellant, therefore, is not insulated from prosecution.

761 F.2d at 641–42.

### III

Etheridge argues that Virginia state law, as it is interpreted by a state judicial official, exempts him from prosecution in the United States District Court. This exception was raised at oral argument when a member of the panel asked the attorneys if the appellant could be prosecuted in the federal court under § 922(g) if, under the circumstances of the case, state law exempted him from prosecution.

Title 18 U.S.C. § 922(g) states:

(g) It shall be unlawful for any person—

(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

. . . .

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Section 921(a)(20) provides:

What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or *has had civil rights restored shall not be considered a convic-*

*tion for purposes of this chapter,* unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

(Emphasis added.)

■ Appellant claims that under Virginia law he has had his civil rights restored by three different actions of the Commonwealth or its agents. First, he contends that the conditions of his probation dated July 6, 1966 allowed him, as a convicted felon, to possess firearms. Second, he claims that the Virginia state judge in dismissing firearm charges against him in 1985 gave him permission to possess shotguns for hunting and, third, he claims that in purchasing his local and state hunting licenses from the Circuit Court of the City of Chesapeake or its agent, he was found to be qualified to carry a weapon for hunting purposes.

■ These claims can not stand in light of the clear language of the statutes of Virginia preventing possession of a firearm by a convicted felon and which establish the only procedure by which a felon may have his right to possess a firearm restored. Section 18.2–308.2 of the Code of Virginia provides in pertinent part:

> It shall be unlawful for any person who has been convicted of a felony under the laws of this Commonwealth, or any other state, the District of Columbia, the United States or any territory thereof, to knowingly and intentionally possess or transport any firearm....

Appellant argues that he comes within an exception found in § 18.2–308(B)(7) of the Code of Virginia, but his position is not well taken. Such section deals only with concealed weapons and the exception allows one while hunting in inclement weather the "temporary protection of his firearm from these conditions." This section allows a person to place his firearm under his coat, hunting jacket or other outer garment to protect it from the weather, but it has no

application to a convicted felon who has not had his rights to possess a weapon restored. Appellant is covered by § 18.2–308.2, and § 18.2–308 has no application to the facts of this case.

The application for and obtaining of a hunting license in the Commonwealth of Virginia does not restore the right of a convicted felon to possess a firearm. Hunting licenses are sold in most sporting goods and hardware stores, and although the merchant may be considered an agent of the Commonwealth in the issuance of such licenses, he is not empowered to restore the rights of a convicted felon to possess a firearm. The issuance of a hunting license does nothing to restore a felon's civil rights.

The conditions of appellant's probation in July 1966 did not restore his rights to possess a firearm. Section 18.2–308.2(C) of the Virginia Code provides the method by which a convicted felon may receive a permit to possess a firearm. The procedure requires that a petition be filed with the circuit court of the jurisdiction in which the felon resides requesting a permit to possess or carry a firearm. The court may in its discretion and for good cause shown grant the petition.[2] Removal of a felon's impediment under federal law is provided in 18 U.S.C. § 925(c) and requires a petition to the Secretary of the Treasury for relief from the disabilities imposed by federal law. Etheridge did not proceed under the Commonwealth statute or the federal statute to remove his disability, and his claims that the disability has been removed by the Virginia Parole Board, the purchase of a hunting license, or statements by a Virginia state court judge are unavailing.

## IV

■ Appellant claims that the enhancement of his sentence under 18 U.S.C. § 924(e)(1) based upon his convictions which occurred more than 20 years ago[3] is a violation of the *ex post facto* clause, and

---

**2.** If appellant had successfully completed this process, he would have been able to claim under 18 U.S.C. § 921(a)(20) that his civil rights had been restored.

**3.** Three of the convictions are more than 20 years old, but the latest conviction was in 1983.

also offends the proportionality requirement expressed in *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).

Title 18 U.S.C. § 924(e) provides:

In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g), and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.

Appellant was convicted in the present action of a violation of § 922(g) and his previous convictions were by courts referred to in § 922(g)(1). He had more than three violent felony convictions. The stipulation is to four prior convictions of violent felonies, two of which involved homicides and the other convictions were unlawful woundings. Each of these convictions involved the use of a firearm. Etheridge must be the type of repeat offender of violent crimes that Congress had in mind when it adopted the sentence enhancement provisions contained in § 924(e)(1).

As applied to Etheridge, the enhancement does not violate the *ex post facto* clause of Article 1, Section 9 of the Constitution. This clause prohibits any statute "which makes more burdensome the punishment of a crime, after its commission." *Beazell v. Ohio*, 269 U.S. 167, 169, 46 S.Ct. 68, 70 L.Ed. 216 (1925). The date of the present offense is determinative, and this date is March 27, 1990, well after 1984, the year in which 18 U.S.C. § 924(e)(1) was enacted in its present form.

Etheridge also argues that his enhanced sentence of 15 years without parole is disproportionate to the offense of which he stands convicted. His argument is unpersuasive because we have held that suc-

cessful proportionality challenges are extremely rare in non-capital cases, and that *Solem* requires extensive proportionality analysis only in cases involving life sentences without parole. *Sutton v. Maryland*, 886 F.2d 708, 712 (4th Cir.1989) (en banc), *cert. denied,* —— U.S. ——, 110 S.Ct. 1493, 108 L.Ed.2d 628 (1990). Accordingly, we need not address proportionality on the present facts.

AFFIRMED.

MULLEN, District Judge, dissenting:

I agree with the conclusions of the majority in all portions of the opinion except Part II, which holds that the trial court did not err in preventing Etheridge from presenting to the jury evidence that a state judge told him that he could use firearms for hunting purposes only. Accordingly, I respectfully dissent.

I believe that the trial court should have allowed Etheridge to present the proffered evidence to the jury that he used the guns only for hunting and Etheridge's own proffered testimony that a state judge told him upon a prior arrest that he could possess firearms for the limited purpose of hunting. I find the reasoning in *United States v. Brady*, 710 F.Supp. 290 (D.Colo.1989), persuasive in concluding that reliance upon a state trial judge's statement of the law, even federal law, can be a defense under the due process clause to prosecution for conduct conforming to the judge's statement of the law. Therefore, I conclude that Etheridge should have been permitted to present evidence on the issue to the jury. Refusal to permit evidence on this issue was error, which necessitates a reversal of the conviction in this case.

*United States v. Bruscantini*, 761 F.2d 640 (11th Cir.), *cert. denied*, 474 U.S. 904, 106 S.Ct. 271, 88 L.Ed.2d 233 (1985), relied upon by the majority, held that the rule in *Cox v. Louisiana*, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965), and *Raley v. Ohio*, 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959), did not apply to a case such as this one, in which a state judge allegedly furnished advice about a federal law, and limited the due process protection to cases

in which the government that advises and the government that prosecutes are the same.

As explained in *Brady,* the holdings in *Cox* and *Raley* were intended to prevent fundamental unfairness and injustice. *Brady,* 710 F.Supp. at 295–96. The focus on the due process inquiry should be upon the unfairness of punishing an individual who conforms his actions to advice given by a judge acting within his jurisdiction. Because a state judge is required to honor both state and federal law in state court proceedings, a person is entitled to rely upon a state judge's statement of federal law as well as state law.

I make no judgment as to the quality or credibility of the evidence offered by Etheridge. The court records showing the dismissal of an arrest warrant are certainly less than compelling. However, Etheridge stood ready to testify as to what the state judge told him. I think that the jury was entitled to hear that evidence and other evidence and make its own credibility determinations.

Because the trial judge erroneously prevented Etheridge from presenting evidence on a matter that, if believed, could have constituted a defense to the charge, I would reverse. Therefore, I respectfully dissent.