16 F.3d 413
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
John Evers KOTON, Jr., Defendant-Appellant.
 No. 92-5801.
 United States Court of Appeals, Fourth Circuit.
 Argued: Sept. 30, 1993.
Decided: Jan. 14, 1994.
 
 Appeal from the United States District Court for the Northern District of West Virginia, at Elkins; Robert Earl Maxwell, Chief District Judge.
 Dorwin John Wolfe, Wallace, Harris & Sims, Elkins, WVA, for appellant.
 Lisa Ann Grimes, Asst. U.S. Atty., Wheeling, WVA, for appellee.
 William A. Kolibash, U.S. Atty., Wheeling, WVA, for appellee.
 Before ERVIN, Chief Judge, HALL, Circuit Judge, and CHAPMAN, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 John Koton, Jr., a convicted felon, appeals his subsequent conviction for knowingly possessing a firearm in violation of 18 U.S.C. Sec. 922(g)(1). Koton alleges that the evidence adduced at trial was insufficient to prove the intent element of the offense. Koton also claims that the district court erred by refusing to instruct the jury on the defense of "entrapment by estoppel." Finding no error, we affirm.
 
 I.
 
 2
 On September 7, 1990, Koton drove his wife Robin and several of their nieces and nephews to the Kingwood Shopping Center in Kingwood, West Virginia. Koton stopped his pickup in front of the Dollar Store, allowing Robin and the children to exit. Struggling to keep a tight rein on the children as they exited, Robin dropped her purse and failed to notice that the .22 automatic pistol she had borrowed from her friend, Amy Williams, had fallen out onto the parking lot pavement.
 
 
 3
 Koton remained with the truck, periodically moving it closer to the store entrance as other drivers pulled away. In turn, James Sphar, who was also waiting for his wife to finish shopping, pulled in behind Koton. Sphar exited his car temporarily to dispose of some trash and saw the pistol lying on the pavement. Sphar picked up the gun and, concealing it beneath his baseball cap, quickly walked to a nearby public telephone to call the police.
 
 
 4
 Shortly thereafter, Chief Tom Martin of the Kingwood Police Department arrived on the scene and retrieved the gun from Sphar. At about the same time, Robin and the children returned to the truck and the Kotons drove out of the parking lot on their way home. They passed Robin's sister driving toward the shopping center and they returned to meet her. When they parked, Robin looked in her purse and finally noticed that the gun was missing. She asked Koton to help her find the gun. Koton looked in the direction of the telephone and saw Sphar and Chief Martin conferring; he also saw the gun on the telephone shelf.
 
 
 5
 Koton walked toward the duo and said, "That's my gun." Chief Martin asked Koton whether he had a permit for the gun; Koton replied that he did not, but that the gun actually belonged to his wife. Martin then asked Koton whether the gun was loaded, and Koton responded that it was. Martin returned the loaded gun to Koton, who walked back to his pickup and drove away.
 
 
 6
 Chief Martin strongly suspected that Koton was on parole and not allowed to have a gun. He contacted the Preston County Sheriff's Department and verified his suspicions. The police obtained a search warrant for Koton's residence, but the gun was never found. Koton was nevertheless indicted as a felon-in-possession, convicted, and sentenced to 24 months imprisonment.
 
 II.
 
 7
 Koton contends that the government failed to prove the intent element of the offense. He does not deny knowing that it was illegal for him to possess a firearm, as he had been advised during his initial contact visit with his parole officer. Rather, Koton claims that the evidence did not prove that he had ever intentionally possessed the gun.
 
 
 8
 Challenges to the sufficiency of the evidence are evaluated according to the standard enunciated in Jackson v. Virginia, 443 U.S. 307 (1979). A judgment of acquittal is proper only when the evidence and reasonable inferences drawn therefrom, viewed in the light most favorable to the prosecution, would not permit any rational trier of fact to find the essential elements of the offense beyond a reasonable doubt. Id. at 319. Applying this standard to Koton's case, we believe that the jury could rationally conclude that he had indeed possessed the gun.
 
 
 9
 The jury was instructed that it could convict Koton upon a finding of either actual or constructive possession. Establishing constructive possession requires the government to prove "ownership, dominion, or control over the contraband itself or the premises ... in which the contraband is concealed." United States v. Blue, 957 F.2d 106, 107 (4th Cir.1992) (emphasis supplied). The evidence is this case is uncontroverted that Koton knew his wife was keeping the gun in the apartment they shared with their children from previous marriages.
 
 
 10
 However, the jury was not instructed in accordance with Blue, though that case had been decided nine months prior to Koton's trial. The jury was instead held to a more stringent standard, allowed to find constructive possession only upon a showing that Koton "... knowingly ha[d] both the power and the intention ... to exercise dominion or control over a thing, either directly or through another person or persons...."
 
 
 11
 Even under this stricter standard, the jury could properly find constructive possession. On October 25, 1991, Koton voluntarily met with ATF agent Steve Vogrin and Detective Joseph Stiles of the Sheriff's Department. Koton explained that his wife had borrowed the gun from Amy Williams because of some threats the family had received. Both Vogrin and Stiles testified that, following the"official" part of the interview, Koton told Stiles, "Joe, you know me and I'll use that gun if I have to." The jury could have easily inferred from Vogrin and Stiles' testimony that Koton was as willing to exercise dominion and control over the pistol on September 7, 1990, as he was just over a year later.
 
 
 12
 The jury could also have found that Koton actually possessed the gun. To begin with, Koton knew the gun was loaded--a detail inconsistent with his claim that his wife exerted exclusive dominion and control over the weapon. But more importantly, when Koton walked over to Sphar and Chief Martin at the Kingwood Plaza, the first words out of his mouth were "that's my gun." Koton did not say "That's my wife's gun," or even "That's the gun my wife borrowed from Amy Williams"; he said "That's my gun," and instead of treating it like the hot potato it was, took it from Chief Martin and walked back to his truck.
 
 
 13
 Based on all the above, we have no trouble holding that the jury could rationally conclude that Koton intentionally possessed the gun.
 
 
 14
 In fact, the jury would probably have been acting irrationally to conclude otherwise.
 
 III.
 
 15
 Koton asserts that, even if he possessed the gun, he did so in reasonable reliance upon the representations of government officials that his conduct was legal. He urges us to adopt the doctrine of "entrapment by estoppel," which some courts have held to bar federal prosecutions where state officials have misled a defendant into believing that prohibited conduct was permitted. Koton argues that the district court erred by failing to so instruct the jury.
 
 
 16
 Entrapment by estoppel is actually a misnomer. It has nothing to do with entrapment and everything to do with estoppel. The idea is that the government should not be able to take advantage of the misstatement of one of its own servants in finding that a defendant has engaged in criminally culpable behavior. For example, in United States v. Brady, 710 F.Supp. 290 (D. Colo.1989), the defendant's conviction under 18 U.S.C. Sec. 922(g)(1) was overturned because he had been erroneously informed by a state judge during an official proceeding that he could continue to possess firearms in connection with his hunting and trapping business.
 
 
 17
 Koton claims that Brady applies to his case because he relied on a statement made to his wife by Edward Slaughter, Koton's state parole officer, that the government could not prevent either Koton's wife or son from owning a gun and, presumably, keeping it in the house. Koton also claims that because Chief Martin willingly returned the gun to him at the Kingwood Plaza, he was entitled to reasonably rely on the implicit assumption that Martin, as an officer of the law, would not cause him to perform an illegal act.
 
 
 18
 This court has already rejected the reasoning of Brady and refused to adopt the defense of entrapment by estoppel, at least to the extent it is claimed that the actions of state officials can estop a federal prosecution. In United States v. Etheridge, 932 F.2d 318 (4th Cir.1991), another case involving a state trial judge erroneously informing a convicted felon that he could own guns for hunting purposes, we held that such a rule "would penalize the wrong government--the government that prosecuted appellant rather than the government that mistakenly and misleadingly interpreted the law." Id., at 321.
 
 
 19
 Koton acknowledges our decision in Etheridge, but urges that we reconsider our position. We cannot do so. A prior panel decision is binding on later panels unless it is overruled by a subsequent en banc opinion of this court or by a superseding contrary decision of the Supreme Court. Busby v. Crown Supply, Inc., 896 F.2d 833, 840-41 (4th Cir.1990). Neither is there any factual basis for distinguishing Koton's situation from that in Etheridge; the cases are quite similar.
 
 
 20
 The decision of the district court in giving, or failing to give, a jury instruction is reviewed for abuse of discretion. United States v. Russell, 971 F.2d 1098, 1107 (4th Cir.1992). Because the requested instruction in the instant case was directly contrary to the law of this circuit, the district court could not have abused its discretion in declining to give it.
 
 
 21
 Nor would such an instruction have been permissible because there was insufficient evidence that a government official gave Koton any advice upon which he could have relied. Koton claims to have been advised by a local police officer that he could carry the gun in violation of federal law. The content of such advice is difficult to discern. When Koton approached the officer and claimed the gun as his own, the officer returned the gun to him and said, "Get the hell out of here." Even if the defense of entrapment by estoppel were recognized for the advice of a state official regarding federal law, these circumstances do not warrant its application. Koton admitted possessing the gun before any government official spoke to him.
 
 
 22
 Furthermore, the instruction given by the court put the issue of Koton's reliance on any advice given by Officer Martin before the jury. The court did not abuse its discretion but rather did all that was possible in Koton's favor, given the circumstances.
 
 
 23
 The judgment of the district court is affirmed.
 
 
 24
 AFFIRMED.