107 F.3d 871
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Scott Lee TINSLEY, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
 No. 95-5564.
 United States Court of Appeals, Sixth Circuit.
 Feb. 12, 1997.
 
 Before: NELSON, MOORE, and COLE, Circuit Judges.
 COLE, Circuit Judge.
 
 
 1
 Defendant Scott Lee Tinsley appeals the district court's denial of a motion under 28 U.S.C. § 2255 to vacate the sentence he received upon conviction. For the following reasons, we affirm the judgment of the district court.
 
 I. BACKGROUND
 
 2
 Following a jury trial, Defendant Scott Tinsley was convicted in the district court on two counts of possession by a felon of firearms or ammunition in violation of 18 U.S.C. § 922(g)(1) and ten counts of making false and fictitious statements in connection with the purchase of firearms in violation of 18 U.S.C. § 922(a)(6). Tinsley was sentenced to fifteen years imprisonment and assessed a $600 fine.
 
 
 3
 At the trial on his firearms charges, Tinsley stipulated that he had been convicted on June 11, 1980 of first-degree manslaughter, a felony, and was sentenced to fifteen years imprisonment. On February 18, 1982, the Kentucky Court of Appeals vacated his conviction and remanded his case to the Jefferson Circuit Court for an evidentiary hearing to determine whether Tinsley was entitled to a new trial.[1] While awaiting the disposition of his case in the Jefferson Circuit Court, Tinsley became eligible for early release and was paroled on March 17, 1982.
 
 
 4
 On April 28, 1982, while Tinsley was on parole, the Jefferson Circuit Court held its evidentiary hearing, determined that he was not entitled to a new trial, and reinstated his felony conviction for first-degree manslaughter. At the hearing, Tinsley's attorney stated that he had informed Tinsley of the hearing, but that Tinsley waived his right to be present. No further appeal was taken from the order of reinstatement.
 
 
 5
 As required by his conditions of release, Tinsley reported to his parole officer, William Rogers, and acknowledged that it would be a violation of federal law for him, as a convicted felon, to purchase, own or possess a firearm. During the two and one-half years of Tinsley's active parole status, Rogers had 116 parole contacts with Tinsley.
 
 
 6
 Tinsley was indicted on October 25, 1983 in the Lincoln County District Court for first-degree assault of his former wife. He was also charged with being a persistent felony offender. The jury was unable to reach a verdict on the assault charge, and the persistent felony offender charge was subsequently dropped on July 19, 1984, based on representations from Tinsley's attorney, Raymond Overstreet, who stated that Tinsley's 1980 felony conviction had been overturned by the Kentucky Court of Appeals. Overstreet made these representations after Tinsley showed him a copy of the Court of Appeals judgment vacating his conviction.
 
 
 7
 On August 29, 1984, Tinsley's active parole status was reduced to inactive supervision. Tinsley states that, at this time, he resumed his former avocation as a gun dealer. Between February 23, 1987 and October 26, 1987, Tinsley signed ten forms issued by the Bureau of Alcohol, Tobacco and Firearms for the purchase of firearms on which he indicated that he had never been convicted in any court of a crime punishable by imprisonment of more than one year.
 
 
 8
 Tinsley was found guilty of disorderly conduct in the Lincoln Circuit Court on October 3, 1987 for discharging a Charter Arms .44 Special handgun within or near the city limits in a threatening manner. The Charter Arms handgun was confiscated by the court following the disorderly conduct charge. Later that month, on October 30, 1987, Tinsley was arrested for the murder of his live-in girlfriend, Tammy Marie Brier, who was found shot to death in Tinsley's house. In the course of executing a search warrant for Tinsley's home, officers seized fourteen firearms and a pad of paper detailing seventy-five firearms transactions.
 
 
 9
 Tinsley stood trial for the murder charge on May 9, 1988 in the Lincoln Circuit Court. Prior to trial, Tinsley successfully moved for suppression of the firearms and pad of paper seized during the search of his home. The court declared a mistrial on May 11, 1988, and rescheduled his trial for February 1989. State officers subsequently turned over to federal officers the firearms evidence seized from Tinsley's residence and the Charter Arms .44 caliber pistol seized from Tinsley as a result of his disorderly conduct violation. A federal indictment was returned against Tinsley on August 18, 1988 charging him with several firearms offenses, and Tinsley was subsequently convicted.
 
 
 10
 Following trial on the firearms offenses, the district judge sentenced Tinsley to fifteen years imprisonment, to be served "consecutive[ly] to any state sentence that [Tinsley] may now or hereafter have to serve." Tinsley was thereafter tried in state court for the murder of Tammy Brier. He was found guilty of murder on August 30, 1989, and sentenced to seventy-five years imprisonment. Tinsley's federal sentence is to commence after he serves his state sentence.
 
 
 11
 In a direct appeal from Tinsley's federal conviction, this court affirmed the judgment of the district court. See United States v. Tinsley, 888 F.2d 1392, 1989 WL 136097 (6th Cir. (Ky.)). On appeal of the district court's refusal to vacate his sentence, Tinsley asserts that the trial court erred by (1) imposing a federal sentence consecutively to an unimposed state sentence; (2) failing to afford him an entrapment by estoppel defense; (3) failing to consolidate Counts 1 and 2 of his indictment; and (4) improperly admitting evidence that was suppressed in a previous state court proceeding.
 
 II. STANDARD OF REVIEW
 
 12
 In order to obtain habeas relief under 28 U.S.C. § 2255, the record must reflect an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993); see also United States v. Ross, 40 F.3d 144, 146 (7th Cir.1994) (applying Brecht to section 2255 motion to vacate). To obtain relief for nonconstitutional error, the record must reflect a fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process. Reed v. Farley, 114 S.Ct. 2291, 2300 (1994); Gall v. United States, 21 F.3d 107, 109 (6th Cir.1994) (citations omitted). Where nonconstitutional issues are at stake, collateral attack should not substitute for a direct appeal. Grant v. United States, 72 F.3d 503, 506 (6th Cir.), cert. denied, 116 S.Ct. 1701 (1996). Nonconstitutional errors are therefore waived for purposes of collateral review unless the error amounts to a denial of due process. Id. In addition, the petitioner must demonstrate cause for, and prejudice from, his failure to present his section 2255 claims at trial or on direct appeal. United States v. Frady, 456 U.S. 152, 167-68 (1982). We review the denial of a motion filed under 28 U.S.C. § 2255 de novo, while examining the district court's factual findings for clear error. Gall, 21 F.3d at 109 (citations omitted).
 
 III. CONSECUTIVE SENTENCE
 
 13
 Tinsley argues that the district court violated his due process rights by sentencing him to serve his federal sentence consecutively to any state sentence that might be imposed. Because this is a pre-guidelines case in which Tinsley was charged with violating federal law on or before October 30, 1987, the applicable sentencing statute is 18 U.S.C. § 3568. The language of section 3568 provides in pertinent part: "The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory or jail for service of such sentence ... No sentence shall prescribe any other method of computing the term."
 
 
 14
 This statute must be read in conjunction with 18 U.S.C. § 4082(a), which provides:
 
 
 15
 A person convicted of an offense against the United States shall be committed, for such term of imprisonment as the court may direct, to the custody of the Attorney General of the United States, who shall designate the place of confinement where the sentence shall be served.
 
 
 16
 Thus, the plain language of the applicable statutes does not directly address the issue before us. The Ninth Circuit, in United States v. Eastman, 758 F.2d 1315, 1317 (9th Cir.1985), interpreted these statutes in regard to a prospective federal sentence, similar to Tinsley's, which was imposed by a district court to "run consecutive[ly] to any sentence that the defendant receives from the State of California." In Eastman, the defendant had been previously convicted in state court, but had not yet received his state sentence at the time of the federal sentencing. The Ninth Circuit determined that for the federal sentence to be enforceable, "it would have been necessary for [the defendant] to be in custody to serve [his] California sentence first. The District Judge must commit the defendant to the custody of the Attorney General who has the discretion to reconcile state-federal conflicts under [18 U.S.C.] § 4082." Id. at 1318. The court therefore ruled that the district court erred in exercising authority which by statute belonged exclusively to the Attorney General.[2] Id. at 1317.
 
 
 17
 The Second Circuit took the opposing view in Salley v. United States, 786 F.2d 546 (2d Cir.1986). In Salley, the district court ordered that the defendant's federal sentence was to run consecutively to any sentence the defendant received in connection with a pending robbery charge in state court. The state court subsequently ordered that the defendant's state sentence run concurrently with the previously imposed federal sentence. Expressing its disagreement with the Ninth Circuit's ruling in Eastman, the Second Circuit upheld the district court's sentence. Id. at 548. See also Anderson v. United States, 405 F.2d 492 (10th Cir.1969) (court approved imposition of federal sentence to be served consecutively to unimposed state sentence).[3]
 
 
 18
 We recognize the problems associated with the sentencing practice employed by the district court, see United States v. Pungitore, 910 F.2d 1084, 1119 (3d Cir.1990), but need not reach the ultimate question raised by Tinsley. This case comes before us on motion pursuant to 28 U.S.C. § 2255. Thus, in order to obtain relief, Tinsley must establish that the district court committed an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings, Brecht, 113 S.Ct. at 1722, or show a fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process. Reed, 512 U.S. 339, 114 S.Ct. at 2300; Gall, 21 F.3d at 109. Tinsley seeks to carry this burden by arguing that the sentence in question (1) violates the principle of dual sovereignty; and (2) was unconstitutionally vague and ambiguous, thereby violating his due process rights. We are not persuaded by his arguments.
 
 
 19
 In considering the principle of dual sovereignty, we find nothing in the record indicating that the state court judge, in the subsequent state court proceeding, intended to impose a concurrent sentence and was frustrated in that regard by the district court's order of consecutive sentences. See Ballard, 6 F.3d at 1508 n. 9 (upholding district court's order that sentence run consecutively to unimposed state sentence where "[t]here is no indication that the state court sentence will be contradictory or frustrated in this case."); but see Clayton, 927 F.2d at 493 ("[A] federal court mandate that its sentence run consecutively with a yet to be imposed state sentence infringe[s] on the right of the state to exercise its own sentencing prerogative. Such a sentence preclude[s] the state from fulfilling its own interests by running the state sentence concurrently with the federal term."). Further, we are not faced with a situation where the state and federal judges actually imposed contradictory sentences. See Ballard, 6 F.3d at 1508 n. 9 (noting the contradictory sentences imposed in Clayton, 927 F.2d at 491). Finally, a defendant who has violated both federal and state criminal statutes has no constitutional right to determine the order of his sentences. Ballard, 6 F.3d at 1510; United States v. Adair, 826 F.2d 1040, 1041 (11th Cir.1987); Jeter v. Keohane, 739 F.2d 257, 258 (7th Cir.1984).
 
 
 20
 We also disagree with Tinsley's contention that his sentence was vague or ambiguous. See Anderson, 405 F.2d at 493 ("Though uncertain at the time, depending upon a possible contingency that no sentence will result from the pending state charge, it will be made certain by the event."); see also Williams, 46 F.3d at 59 (federal sentence was definite and certain where it was to commence on completion of any state sentence imposed in pending state court case). Consistent with the holdings in Anderson and Williams, we believe that Tinsley's sentence of fifteen years imprisonment--to be served consecutively to any sentence he may receive in state court--was clear and definite.
 
 
 21
 Therefore, based on the facts of the present case, we conclude that Tinsley is not entitled to relief under section 2255 because he has failed to show a fundamental defect in his sentencing or demonstrate error of a constitutional magnitude which had a substantial and injurious effect on that sentencing. See Brecht, 113 S.Ct. at 1722; Reed, 512 U.S. 339, 114 S.Ct. at 2300; Gall, 21 F.3d at 109.
 
 IV. ENTRAPMENT BY ESTOPPEL
 
 22
 Tinsley next asserts the defense of entrapment by estoppel, arguing that he reasonably relied on assurances by his attorney and state officials in concluding that he was not a convicted felon and could therefore legally possess firearms. Tinsley's persistent felony offender charge was dismissed on July 19, 1984 in the Lincoln Circuit Court after his attorney showed the court a copy of the Kentucky Court of Appeals opinion vacating his prior felony conviction. Tinsley maintains that, at the time of the dismissal, he was told by the state court judge, or in the presence of the judge, that because his conviction had been vacated he was not a convicted felon and could legally possess firearms. Tinsley also claims that, after the persistent felony offender charge was dismissed, he asked state parole officer Rogers why he had to report to him if he was not a convicted felon. Rogers allegedly responded that Tinsley could not be on parole because he was not a convicted felon, and was therefore not required to report to Rogers.
 
 
 23
 Tinsley also contends that Lincoln County Sheriff Earl McWhorter made similar representations to him that he was legally able to possess a firearm. Specifically, Tinsley notes that he lost a .44 caliber handgun[4] in late 1986 or early 1987 which was ultimately found by a passerby and turned over to the Lincoln County Sheriff's Office. Tinsley learned that the pistol had been recovered and requested that the Lincoln County Sheriff's Office return it to him. Sheriff McWhorter refused to immediately return the handgun to Tinsley, telling him that he had to "do some checking on it." McWhorter then spoke with the County Attorney about giving Tinsley the gun, and the two "collectively agreed" to return the gun to Tinsley after he signed a receipt for it. Tinsley states that McWhorter knew he was a gun trader, that he had possession of firearms at his home, and that possession of firearms by a convicted felon was a violation of both state and federal law. Thus, Tinsley argues that McWhorter's decision to surrender the pistol to him after "doing some checking" on the pistol and consulting with the County Attorney led him to believe that he was legally able to own a firearm.
 
 
 24
 Tinsley contends that he reasonably relied on these representations and, therefore, that his prosecution for possessing a firearm as a convicted felon is unlawful under the doctrine of "entrapment by estoppel." The doctrine of entrapment by estoppel is based upon the fundamental notions of fairness embodied in the Due Process Clauses of the Fifth and Fourteenth Amendments. See United States v. Levin, 973 F.2d 463, 468 (6th Cir.1992). We have held that for this defense to be available, "the court must conclude that (1) a government must have announced that the charged criminal act was legal; (2) the defendant relied on the government announcement; (3) the defendant's reliance was reasonable; and, (4) given the defendant's reliance, the prosecution would be unfair." Id. (citing United States v. Smith, 940 F.2d 710 (1st Cir.1991).
 
 
 25
 We need not apply these factors in the present case, however, because none of the assurances on which Tinsley relies were made by an "authorized government official" for purposes of the entrapment by estoppel defense. See United States v. Collins, 61 F.3d 1379, 1385 (9th Cir.), cert. denied, 116 S.Ct. 543 (1995). When asserting this defense in regard to a federal crime, the defendant must have reasonably relied on assurances made by a federal, not state, official. United States v. Spires, 79 F.3d 464, 466-67 (5th Cir.1996) (to satisfy requirements of the defense when charged with a federal crime, defendant must show reliance on either a federal government official or authorized agent of the federal government); United States v. Brebner, 951 F.2d 1017, 1026 (9th Cir.1991) (defendant "not entitled to rely on any representations made by state or local officials because, unlike situations where estoppel has been upheld, these officials lacked the authority to bind the federal government to an erroneous interpretation of federal law"); United States v. Bruscantini, 761 F.2d 640, 642 (11th Cir.1985) (benefit of encouraging government officials to know and articulate the law not present where application of the defense would penalize the wrong government); United States v. Caron, 64 F.3d 713, 717 (1st Cir.1995) (endorsing reasoning of Bruscantini ) (limited en banc review granted on unrelated issue), cert. denied, 116 S.Ct. 2569 (1996). See also United States v. Achter, 52 F.3d 753, 755 (8th Cir.1995); United States v. Etheridge, 932 F.2d 318, 321 (4th Cir.1991); United States v. Clark, 986 F.2d 65, 69 (4th Cir.1993).
 
 
 26
 This court reached a similar result in United States v. Hurst, 951 F.2d 1490 (6th Cir.1991). In that case, the defendants were charged with violating federal gambling laws, but had asserted the defense of entrapment by estoppel.[5] In affirming their convictions, we held that the defense of entrapment by estoppel was not available where there was no evidence that the defendants were ever told by state officials that their conduct was legal, and where the statements on which the defendants allegedly relied were made by state officials regarding state law. Id. at 1499.
 
 
 27
 Both of the United States Supreme Court cases Tinsley cites in his brief offer him little support as they involve situations where state authorities affirmatively misled defendants about what is permitted under state law. See Cox v. Louisiana, 379 U.S. 559 (1965) (police chief made representations to demonstrators concerning state law); Raley v. Ohio, 360 U.S. 423 (1959) (state official made representation concerning rights under state constitution). While the district court decision in United States v. Brady, 710 F.Supp. 290 (D.Colo.1989) is more favorable to Tinsley's argument, this case has been specifically rejected by at least one circuit. See Etheridge, 932 F.2d at 320-21.
 
 
 28
 In holding with the majority of courts that have addressed this issue, we conclude that the entrapment by estoppel defense is not available because the representations on which Tinsley relies were made by state, and not federal, officials.
 
 V. MERGER OF COUNTS 1 AND 2
 
 29
 Tinsley argues that his convictions and separate sentences on Counts 1 and 2 are illegal because they are based on the same conduct. Tinsley was charged in Count 1 with possession of a .44 caliber handgun on October 3, 1987, the date this firearm was seized after Tinsley's arrest for disorderly conduct. Count 2 alleges that Tinsley possessed fourteen different firearms on October 30, 1987, the date that his home was searched following the murder of Tammy Brier. Tinsley maintains that he can only be convicted on one count for these offenses because he possessed all the firearms in question on October 3, 1987.
 
 
 30
 We addressed a factually similar case in United States v. Vance, 724 F.2d 517 (6th Cir.1983). In Vance, Defendant Dixon was arrested with a loaded firearm after leaving a dentist's office and before entering his truck. Three pistols and an Uzi submachine gun were subsequently seized from his truck. Dixon, along with co-defendant Vance, were each charged with separate counts of possession of firearms for the guns possessed on their persons and for the guns that were in the truck. In upholding Defendant Dixon's conviction on two separate counts, we stated:
 
 
 31
 This court has construed this criminal statute under the principle of lenity as forbidding the government to treat, as a separate offense, each weapon simultaneously possessed by a felon.[6] See United States v. Rosenbarger, 536 F.2d 715, 720 (6th Cir.1976). Here, however, there was evidence that Dixon possessed a loaded pistol while visiting a dentist's office, in addition to evidence that both he and Vance were in possession of the truck where the four weapons were found.
 
 
 32
 We believe there was evidence from which the jury could have found at least two separate possessions of the weapons.[7] Id. at 518.
 
 
 33
 In the present case, Tinsley's possession of a .44 caliber handgun in a McKinney, Kentucky parking lot on October 3, 1987, was separate and distinct from his possession of the firearms later seized during the October 30, 1987 search of his residence. Therefore, we find no error in Tinsley's conviction and subsequent sentence on both Count 1 and Count 2 of the indictment.
 
 VI. SUPPRESSION OF EVIDENCE
 
 34
 Finally, Tinsley asserts that the district court improperly admitted evidence of the fourteen firearms and the pad of paper detailing firearms transactions seized during the October 30, 1987 search of his residence. Tinsley's attorney filed two motions before the district court to suppress this evidence. The first motion asserted that the search was invalid due to lack of consent, lack of probable cause and overbreadth of the search warrant. In a second motion to suppress, Tinsley argued that the district court improperly admitted evidence of the predicate felony conviction. The district court denied both motions. On direct appeal, Tinsley challenged only the district court's ruling concerning his previous felony conviction. See Tinsley, 888 F.2d 1392, 1989 WL 136097 at ** 3. Although Tinsley omitted this issue from his appellate brief, he raised this issue before the district court and has moved this court to consider it on appeal. We hereby grant the motion to consider all of the issues presented in this appeal and affirm the decision of the district court. See, e.g., Meade v. Pension Appeals and Review Comm., 966 F.2d 190, 194 (6th Cir.1992).
 
 
 35
 In this section 2255 appeal, Tinsley argues that the district court erred in admitting evidence from the October 30, 1987 search based on the Lincoln Circuit Court's earlier suppression of the same evidence. In suppressing these items, the Lincoln Circuit Court ruled that, although the search was conducted under a valid warrant, the items were improperly seized because there was no evidence that the items were either contraband or fruits of criminal activity. Tinsley argues that use of the evidence in question in the subsequent federal trial violates the "silver platter doctrine,"[8] the "fruit of the poisonous tree" doctrine, collateral estoppel, and his Fourth Amendment rights generally.
 
 
 36
 In Elkins v. United States, 364 U.S. 206, 223-24 (1960), the United States Supreme Court stated:
 
 
 37
 In determining whether there has been an unreasonable search and seizure by state officers, a federal court must make an independent inquiry, whether or not there has been such an inquiry by a state court, and irrespective of how any such inquiry may have turned out. The test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed.
 
 
 38
 See also United States v. Wright, 16 F.3d 1429, 1437 (6th Cir.1994); United States v. Shields, 978 F.2d 943, 945 (6th Cir.1992). In the present case, the fourteen firearms and pad of paper seized from Tinsley's residence may have been properly suppressed in the state murder trial because they could not be considered fruits of criminal activity associated with that charge. However, this evidence was clearly related to Tinsley's violation of federal firearms laws, and the district court properly made an independent determination of the admissibility of the evidence for the firearms charges. Accordingly, Tinsley's argument that the district court should have been constrained by the prior evidentiary rulings of the state court lacks merit.
 
 VII. CONCLUSION
 
 39
 For the foregoing reasons, the district court properly denied Tinsley's section 2255 motion. The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The Kentucky Court of Appeals remanded Tinsley's case to the Jefferson Circuit Court to conduct an evidentiary hearing that would determine whether Tinsley was entitled to a new trial under Kentucky law. At this hearing, the trial court was to determine whether the prosecution's eyewitness had been convicted of a felony that was relevant to the issue of credibility. If so, the trial court was directed to grant Tinsley a new trial. If not, the trial court was ordered to reinstate the judgment of conviction
 
 
 [2]
 In its opinion, the court also noted that the federal sentence presented a conflict with California law where state judges have the express authority to impose sentences concurrently with, or consecutively to, federal sentences. Id. at 1318
 
 
 [3]
 Section 3568 was ultimately repealed by the Comprehensive Crime Control Act of 1984, P.L. 98-473, and replaced by 18 U.S.C. § 3584. The circuits have similarly been split on whether section 3584 provides federal courts with the authority to impose sentences consecutively to unimposed state court sentences. Compare United States v. Williams, 46 F.3d 57 (10th Cir.), cert. denied, 116 S.Ct. 92 (1995), United States v. Ballard, 6 F.3d 1502 (11th Cir.1993), and United States v. Brown, 920 F.2d 1212 (5th Cir.1991), with United States v. Clayton, 927 F.2d 491 (9th Cir.1991)
 
 
 [4]
 This is not the same .44 caliber handgun later seized from Tinsley following his disorderly conduct violation on October 3, 1987
 
 
 [5]
 The defendants in Hurst were charged with violating gambling laws under 18 U.S.C. § 1955. In our decision, we noted that
 [o]ne of the purposes of section 1955 was to aid in the enforcement of state gambling laws where state enforcement was disabled by corruption of state officials. Allowing a state official's alleged complicity in illegal activities to void the convictions here would violate the intent of Congress in enacting section 1955 and distort the clear due process doctrine set forth in Cox and Raley.
 Hurst, 951 F.2d at 1499-1500 (citing Cox v. Louisiana, 379 U.S. 559 (1965); Raley v. Ohio, 360 U.S. 423 (1959)) (citations omitted).
 
 
 [6]
 The defendants were charged with violating 18 U.S.C.App. § 1202(a)(1), the predecessor to 18 U.S.C. § 922(g)(1)
 
 
 [7]
 The Vance court also noted that Defendant Vance was properly charged with two separate counts because he had bought the weapons found on his person and in the truck on separate occasions. Id. at 518. Contrary to Tinsley's assertions on appeal, this factual distinction does not mandate a different conclusion in the present case, because we also held in Vance that Defendant Dixon--who had not purchased the guns--was properly charged with two counts of possession. See id
 
 
 [8]
 In Elkins v. United States, 364 U.S. 206 (1960), the United States Supreme Court rejected the so-called "silver platter" doctrine, which had allowed evidence that was illegally seized by state authorities to be admitted in federal criminal trials. However, the Elkins court stated that a federal court will not be bound by a state court's ruling that an illegal search has occurred, but must make its own independent determination whether the search violated the Fourth Amendment. Id. at 223-24