**UNITED STATES of America,
Plaintiff,**

v.

**Larry Eldon YELEY, Defendant.**

**No. TH04–0006–CR–01–T/L.**

United States District Court,
S.D. Indiana,
Terre Haute Division.

Oct. 27, 2004.

William Marsh, Indianapolis.

Office of Ind. Fed. Community Defenders, Timothy Morrison, Assistant United States Attorney, Indianapolis.

**ENTRY ON DEFENDANT'S REQUEST FOR PROPOSED JURY INSTRUCTION ON AFFIRMATIVE DEFENSE OF ENTRAPMENT BY ESTOPPEL AND RELIANCE ON PUBLIC AUTHORITY; GOVERNMENT'S MOTION IN LIMINE TO PRECLUDE REFERENCE TO THAT DEFENSE**

TINDER, District Judge.

Defendant Larry Eldon Yeley is charged with violating 18 U.S.C. § 922(g)(1), the statute making it unlawful for any person who has been convicted of a felony to possess a firearm or ammunition with an interstate nexus. Pursuant to Federal Rule of Criminal Procedure 12.3, Yeley filed a notice of defense, claiming that he was exercising public authority on behalf of the Greene County [Indiana] Probation Department and the Bureau of Alcohol, Tobacco, and Firearms (ATF). Along with his Rule 12.3 notice, Yeley

included a proposed jury instruction that would submit this defense to the jury (dkt. no. 52). In response, the government filed a motion in limine to prohibit Yeley from offering evidence of the affirmative defenses of entrapment by estoppel or reliance on public authority. A hearing on the government's motion was held on October 26, 2004.

## I. BACKGROUND

In June 2003, Defendant Yeley was placed on probation as a result of a drunk driving conviction in Greene County, Indiana. Hunting is a popular sport in southern Indiana, and Yeley is an avid deer hunter. With the approach of deer hunting season, he sought to clarify whether his status as a probationer would prevent him from deer hunting. On October 6, 2003, an officer of the Greene County Probation Department gave Defendant Yeley a written "hunting permit" that authorizes him to "carry a Shotgun for the purpose of *legal game hunting only*," as well as for "target practice." (Def's.Ex. 4C.) (emphasis in original). Yeley argues that he interpreted this document to be a statement by the probation officer that it was legal for him to possess firearms, despite his prior felony conviction.[1] Such an interpretation was bolstered, according to Yeley, by the fact that in 1995 the Indiana Department of Natural Resources issued to him a "Handicapped Hunting Permit" that allowed him to "use a vehicle for access only (no hunting from a vehicle)." (Def. Ex.'s 4.)

In addition, following the dismissal of a 1991 federal felon-in-possession case against him, Yeley states that the ATF sent him a letter indicating that firearms seized as a part of that case would be returned to him if he posted a $2,500 bond. In actuality, the ATF letter simply notified Yeley of the procedure required to judicially challenge the seizure and forfeiture of the seized firearms, which included the posting of a bond to seek permission or mitigation of the forfeiture. (Def.'s Ex. 1.) A subsequent petition was filed seeking return of the firearms to Dale Yeley, the Defendant's father. (Gov't's Ex. 2.) However, this petition was denied, and the guns were eventually destroyed by order of the ATF on March 16, 1993. (Gov't's Ex. 3.)

## II. DISCUSSION

Yeley contends that the ATF letter caused him to believe that it was legal for him to possess firearms, and that the Greene County hunting permit and 1995 handicapped hunting permit reinforced that belief. The affirmative defense known as reliance on public authority or entrapment by estoppel is "rarely available." *United States v. Rector*, 111 F.3d 503, 506 (7th Cir.1997), *overruled on other grounds by United States v. Wilson*, 169 F.3d 418 (7th Cir.1999). In the Seventh Circuit, this defense requires that:

> "the one misleading the defendant be an official of the [government]; that he actively mislead the defendant; and that the defendant's reliance be actual and reasonable in light of the identity of the agent, the point of law represented, and the substance of the misrepresentation."

*Id.* (quoting *United States v. Howell*, 37 F.3d 1197 (7th Cir.1994)).

---

1. Unfortunately, Yeley did not disclose to the probation officer that he had suffered two felony convictions, the first in 1971 and the second in 1988. The probation officer asked Yeley whether there was any reason he could not have a firearm legally, to which he received a negative response. It appears that no criminal record check on Yeley was conducted by the Greene County authorities.

The first issue for this court to decide is whether the defense may be raised as to federal charges when a defendant claims he was misled by state or local officials.[2] Yeley asserts that the due process clause allows such a defense under these circumstances, and relies primarily on *United States v. Brady*, 710 F.Supp. 290 (D.Colo. 1989). In *Brady*, the court entered a judgment of not guilty for a defendant charged with violating § 922(g)(1) after a state court judge had told him that he could "utilize a firearm specifically for hunting and trapping within the confines of his occupation." 710 F.Supp. at 292. The firearm possessed by the defendant in *Brady* was a pistol used in pursuit of his occupation as a trapper of wild animals. *Id.* The court found that it would be a violation of the defendant's due process rights to convict him based on conduct that conformed to the state judge's advice as to the law. *Id.* at 294. In so holding, the court relied heavily on *Raley v. Ohio*, 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959) and *Cox v. Louisiana*, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965). However, both of those cases involved defendants who were charged with violating state law, and who had relied on prior interpretations of the applicable state law by state officials. Those cases are thus distinguishable from the instant case given that Yeley is being charged under federal law.

■ The Seventh Circuit-and the weight of authority in other circuits-holds that the entrapment by estoppel defense does not apply when a defendant charged with a *federal* crime claims to have been misled by a state official. *See United States v. Funches*, 135 F.3d 1405, 1407–08 (11th Cir.1998); *Rector*, 111 F.3d at 505–07; *United States v. Caron*, 64 F.3d 713, 714–17 (1st Cir.1995); *United States v. Achter*, 52 F.3d 753, 755 (8th Cir.1995); *United States v. Etheridge*, 932 F.2d 318, 320–22 (4th Cir.1991) (rejecting application of defense to § 922(g)(1) where defendant claimed to have relied on advice of state trial judge). The court is bound to follow the dictates of the Seventh Circuit, and moreover finds these cases more persuasive than *Brady*. "If a defendant were permitted to raise reliance on public authority based on a statement by a state or local official as a defense to federal charges, then a statement of a single state or local individual could bind not only other state authorities but also, the federal government." *United States v. Cross*, 113 F.Supp.2d 1253, 1266 (S.D.Ind.2000). "This would occur even though the state or local individual had no right or authority to bind the federal government." *Id.* As the *Etheridge* court noted, to permit the defense in this context " 'would penalize the wrong government—the government that prosecuted the [defendant] rather than the government that mistakenly and misleadingly interpreted the law.' " 932 F.2d at 321 (citation omitted). Therefore, Yeley's arguments with respect to the Greene County hunting permit must fail.[3]

**2.** The court will focus its analysis in this respect to the "hunting permit" issued by the Greene County Probation Department that purportedly authorized the Defendant to carry a shotgun for hunting purposes, and not on the 1995 handicapped hunting permit. The handicapped hunting permit does not relate to firearm possession; rather, such a permit merely addresses the Defendant's means of ingress and egress to a hunting site. (Def.'s Ex. 4.)

**3.** In addition, the court notes that the Greene County hunting permit purportedly gave Yeley the right to possess only a shotgun. In the indictment, however, the government has charged Yeley with possessing not only a shotgun, but also several other types of rifles, including two semi-automatic assault weapons, as well as various types of non-shotgun ammunition (including some of the armor piercing variety).

■ Similarly, the court finds that Yeley's argument in regard to a forfeiture letter sent by the ATF also must fail. The letter provides that "[s]ince information received in this office indicates you may have an interest in the property, this is to advise you that administrative forfeiture proceedings have been instituted to perfect its forfeiture." (Gov't's Ex. 1.) The letter goes on to state that "[i]f you have an interest in the property and desire judicial adjudication of the matter at any time, a claim and cost bond must be filed on or before the final claim date." (*Id.*) However, the letter does not state that Yeley has permission to *possess* firearms. The letter merely recognizes that he may have had an ownership interest in the firearms that had been seized from him.[4] Yeley can be allowed to persist as the owner of the weapons, and therefore have an interest in them, without being allowed to actually possess them. For example, Yeley could have entrusted the weapons to his father, who could then maintain possession of the weapons despite Yeley's posture as their true owner. Or, he could have conveyed his ownership interest in the guns to another person without ever regaining possession of them. It is possession, not ownership, of firearms that is prohibited by 18 U.S.C. § 922(g)(1).

Despite the fact that the letter makes no mention of a right to possess firearms, Yeley argues that he interpreted the letter as giving him such a right, and that whether his belief was reasonable is a question for the jury. However, Yeley's subjective belief as to the authority granted him by the ATF letter is not the test. *See Rector*, 111 F.3d at 506. The entrapment by estoppel defense requires reliance that is "objectively reasonable." *Id.* (citing *Howell*, 37 F.3d at 1204–05). The facts do not support the argument that Yeley's reliance was objectively reasonable. The ATF letter makes no mention of a right to possess firearms, and Yeley has offered no additional evidence that a federal official ever informed Yeley that he could legally own or possess a firearm. As the Eighth Circuit has noted, "[i]t is reasonable for a convicted felon to question his ability to possess a firearm, and to investigate any confusing language more thoroughly." *United States v. Benning*, 248 F.3d 772, 776 (8th Cir.2001). Furthermore, the question of whether Yeley's reliance on the ATF letter was objectively reasonable is not a question for the jury in this situation. *See United States v. Santiago–Godinez*, 12 F.3d 722, 726 (7th Cir.1993) ("The legal sufficiency of a proffered defense is a question of law ..."); *Benning*, 248 F.3d at 776 (applying objective reasonableness standard to determine that defendant's reliance on wording of ATF form to support defense of entrapment by estoppel was not reasonable; government's motion in limine upheld).

■ Yeley also asserts that the dismissal of the 1991 federal firearms charge was part of his basis in concluding that his possession of firearms was lawful. Yet, nothing in the nature of that dismissal suggests that Yeley's possession of firearms in 1991 was permissible under the law. The order of dismissal, which Yeley says he received, does not contain any

---

4. During his testimony at the hearing on this subject, Yeley also mentioned that he had a telephone conversation with ATF Agent B.D. Gilbert after the forfeiture of the 1991 guns during which he was told that the guns were destroyed and that he would need to obtain other ones. Yeley demonstrated at the hearing that his accuracy in recounting conversations with government officials is not good. Nonetheless, he does not argue that he relied on his version of Agent Gilbert's statement in obtaining the firearms that he is charged with possessing in this case.

statements, or even hints, that a convicted felon can possess a firearm without violating federal law. By merely sending the order of dismissal to Yeley, no federal official actively misled him, nor did any official assure him that certain conduct was legal. *See Rector,* 111 F.3d at 506; *Benning,* 248 F.3d at 775. Prosecutors have broad discretion in deciding whether to prosecute a case, and the voluntary dismissal of the 1991 charge against Yeley was far from an affirmative statement by a government official condoning Yeley's continued possession of firearms. So, the fact that the 1991 case was dismissed does not lead to a conclusion that Yeley's claim of reliance was objectively reasonable.

Moreover, § 922(g)(1) creates a general intent crime. *See United States v. Lane,* 267 F.3d 715, 720 (7th Cir.2001); *United States v. Klein,* 13 F.3d 1182, 1183 (8th Cir.1994). The government must prove beyond a reasonable doubt that (1) Yeley has been previously convicted of a crime punishable by imprisonment for a term exceeding one year, (2) Yeley knowingly possessed a firearm, and (3) the firearm had a nexus with interstate commerce. *Lane,* 267 F.3d at 717. "The requirement that the government must show that the defendant 'knowingly possessed a firearm' means only that the government must prove the defendant's awareness that he possessed a firearm; the government need not demonstrate that the defendant possessed the firearm with an intent to cause harm, *or with knowledge that such possession was unlawful.*" *United States v. Dodd,* 225 F.3d 340, 344 (3d Cir.2000) (emphasis added). The situation would be different if, for example, Yeley had been charged with specific intent crimes like tax evasion or failure to file income tax returns, which both require a mental state of "willfulness." *See Cheek v. United States,* 498 U.S. 192, 606–07, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991). In such situations, a defendant's good-faith belief that the tax laws do not impose any duty on him does not have to be objectively reasonable in order to be considered by the jury. While the defense of entrapment by estoppel is typically available for both general and specific intent crimes, see *Cross,* 113 F.Supp.2d at 1264–65, what Yeley subjectively thought the ATF letter authorized him to do has no bearing on whether he knowingly possessed firearms.

In sum, Yeley is precluded as a matter of law from employing the affirmative defense of reliance on public authority or entrapment by estoppel. *Rector,* 111 F.3d at 507. The facts upon which he hopes to build this defense do not support it.

## III. CONCLUSION

For the foregoing reasons, the Government's motion in limine (dkt. no. 56) is **GRANTED**, and the Defendant's request to include Proposed Jury Instruction Number One (dkt. no. 52) is **DENIED**.

Counsel and the witnesses are OR-DERED to make no mention of the following in the presence of the jury or prospective jurors:

1. The "Hunting Permit" issued by the Greene County Probation Department, and the 1995 "Handicapped Hunting Permit" issued by the Indiana Department of Natural Resources;

2. The Defendant's 1991 arrest in this district for possession of firearms by a convicted felon, the subsequent dismissal of that charge and the subsequent forfeiture proceedings.