UNITED STATES of America,
Plaintiff,

v.

Rondell L. CROSS, Jr., Robert G. Brown, II, John L. Crouse, Terry Rhoades, Vicky L. Strickland, and Aaron C. Koons, Jr., Defendants.

Nos. IP 99–0015–CR–03–T/F, IP 99–0015–CR–06–T/F, IP 99–0015–CR–04–T/F, IP 99–0015–CR–07–T/F, IP 99–0015–CR–05–T/F, IP 99–0015–CR–08–T/F.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Sept. 1, 2000.

Christina McKee Winfield Ong, Office of U.S. Attorney, Indianapolis, IN, for United States of America.

Kevin McShane, Indianapolis, IN, for Rondell L. Cross, Jr.

Mark Inman, Indianapolis, IN, for Robert G. Brown.

Andrew Maternowski, Indianapolis, IN, for John L. Crouse.

Richard Kempf Ancel & Dunlap LLP, Indianapolis, IN, for Terry Rhoades.

Richard Kammen, McClure McClure & Kammen, Indianapolis, IN, for Vicky L. Strickland.

Linda Wagoner, Indiana Federal Community Defender, Indianapolis, IN, for Aaron C. Koons, Jr.

### Entry On Government's Motion in Limine

TINDER, District Judge.

The government moves for an order in limine prohibiting the defendants from offering the following: (1) evidence of the defendants' knowledge or intent regarding whether the business involved illegal gambling, (2) evidence of other jurisdictions' actions regarding gambling, and (3) opinion testimony of how the gambling devices owned and run by the defendants operate when that testimony is not supported by a foundation. Before addressing the motion in limine, however, the court addresses a few issues relating to the allegations of *mens rea* in certain counts of the superseding indictment (the "indictment").

### I. The Indictment's Allegations of *Mens Rea*

Rule 7(d) of the Federal Rules of Criminal Procedure authorizes the court to "strike surplusage from the indictment" on motion of the defendant. FED.R.CRIM.P. 7(d). No defendant has moved to strike surplusage from the indictment. However, the court may disregard mere surplusage in an indictment. *See, e.g., United States v. Greene*, 497 F.2d 1068, 1086 (7th Cir.1974) (holding allegations in indictment not essential to prove the crime charged are mere surplusage), *cert. denied*, 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975); *accord United States v. Good Shield*, 544 F.2d 950, 953 (8th Cir.1976); *United States v. Archer*, 455 F.2d 193, 194–95 (10th Cir.1972); *Bary v. United States*, 292 F.2d 53, 55–56 (10th Cir.1961); *cf. United States v. Collins*, 920 F.2d 619, 631 (10th Cir.1990) (concluding court may strike surplusage allegations not relevant to the charge in the indictment). As one court stated, "There is a wealth of federal caselaw to the effect that overstatement of the pertinent *mens rea* in an indictment is 'mere surplusage' that neither obligates the prosecutor to prove more than the law requires nor obligates the trial judge to misinstruct the jury." *Warner v. Zent*, 997 F.2d 116, 130 (6th Cir.1993) (affirming district court's decision to instruct jury that the applicable *mens rea* was reckless indifference rather than knowledge as charged in the indictment), *cert. denied*, 510 U.S. 1073, 114 S.Ct. 883, 127 L.Ed.2d 78 (1994); *see also United States v. Cancelliere*, 69 F.3d 1116, 1121 (11th Cir.1995) (noting that "mere surplusage may be deleted from the indictment without error" and that "willfulness" is not an element of the offense of money laundering); *United States v. Liparota*, 735 F.2d 1044, 1047–48 (7th Cir.1984) (holding that inclusion of term "willfully" in indictment charging general intent crime did not require the government to prove specific intent), *rev'd on other grounds*, 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985).

Count 2 of the indictment charges Defendants Rondell L. Cross, Jr., Robert G. Brown, II, John L. Crouse, Terry Rhoades, and Vicky L. Strickland with the offense of operating an illegal gambling business in violation of 18 U.S.C. §§ 1955 and 2. To prove a violation of Section 1955, the government must prove beyond a reasonable doubt that a defendant conducted, financed, managed, supervised, directed, or owned all or part of a gambling

business that: (1) violated state law; (2) involved five or more persons in the operation of the business; and (3) was in substantial continuous operation for more than 30 days or had gross revenue of $2,000 or more in any single day. *See* 18 U.S.C. § 1955; *United States v. Cyprian*, 23 F.3d 1189, 1199 n. 14 (7th Cir.1994); *United States v. Balistrieri*, 779 F.2d 1191, 1210 (7th Cir.1985).

 The offense of operating an illegal gambling business in violation of Section 1955 is a general intent crime. *See, e.g., United States v. Ables*, 167 F.3d 1021, 1031 (6th Cir.) (holding government not required to prove defendant knowingly violated state law in order to prove defendant conducted illegal gambling business in violation of § 1955), *cert. denied*, 527 U.S. 1027, 119 S.Ct. 2378, 144 L.Ed.2d 781 (1999); *United States v. O'Brien*, 131 F.3d 1428, 1429–30 (10th Cir.1997) (stating § 1955 "requires only a general criminal intent"). In *Cyprian*, the Seventh Circuit held that the defendant's state of mind was not an essential element of the offense under Section 1955. *Cyprian*, 23 F.3d at 1199. The court explained, "because guilt under § 1955 is premised upon 'conduct,' [the defendant] did not need to know that his actions were illegal; he only needed to know that he performed the acts which turned out to be illegal." *Id.* Thus, the government need not prove that a defendant knowingly violated a state law in order to prove the operation of an illegal gambling business in violation of 18 U.S.C. § 1955. *See Ables*, 167 F.3d at 1031; *O'Brien*, 131 F.3d at 1430 (holding defendant need not know that gambling business violated state law); *United States v. Hawes*, 529 F.2d 472, 481 (5th Cir.1976) (holding intent to violate state law is not a necessary element of a § 1955 crime); *United States v. Conley*, 859 F.Supp. 909, 930 (W.D.Pa.1994) ("under Section 1955, a defendant need not be shown to have acted

willfully in the sense of intentionally violating a known state legal duty").

*Liparota v. United States*, 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985), cited by Defendant Strickland, does not alter this conclusion. In that case the Supreme Court interpreted the federal statute governing food stamp fraud which provided in pertinent part: "whoever knowingly uses, transfers, acquires, alters, or possesses coupons in any manner not authorized by [the statute] or the regulations" violates federal law. 7 U.S.C. § 2024(b)(1). The issue presented in the case was whether the government had to prove that the defendant knew that he was acting in a manner not authorized by statute or regulations. *Liparota*, 471 U.S. at 420–21, 105 S.Ct. 2084. The Court held that it did. *Id.* at 433, 105 S.Ct. 2084. The Court's determination turned on its resolution of the ambiguity created by the placement of the adverb "knowingly"- whether the adverb modified not only the verbs immediately following it but also the prepositional phrase at the end of the provision. Section 1955, however, does not contain such an ambiguity. In the absence of a similar ambiguity, the court declines to extend *Liparota*. Furthermore, an extension of *Liparota* to Section 1955 would be contrary to *Cyprian* and *Balistrieri*, which the court must follow. Therefore, the court concludes that evidence of a defendant's intent is irrelevant as to the crime of operating an illegal gambling business in violation of Section 1955.

 Count 2 alleges that the Defendants "knowingly" operated an illegal gambling business. It, therefore, over alleges the *mens rea* of the Section 1955 offense. The inclusion of this surplusage in the indictment does not require the government to prove that the Defendants acted knowingly as that is not an element of the offense charged. The jury will be instructed on the essential elements of the offense of operating an illegal gambling business in violation of 18 U.S.C. § 1955.[1] The

---

**1.** The court will give an instruction similar to the following:

inclusion of the term "knowingly" in Count 2 should and will be disregarded.

■ Counts 4 and 5 of the indictment and Counts 6 through 9 charge Defendant Aaron G. Koons, Jr., and Defendant Strickland, respectively with the offense of money laundering to promote illegal gambling in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and (2). To prove money laundering in violation of § 1956(a)(1)(A)(i), the government must prove that a defendant "(1) conducted a financial transaction affecting interstate commerce with property representing the proceeds of some illegal activity; (2) knew the property represented illegal proceeds; and (3) conducted the transaction with the intent of promoting the unlawful activity." *United States v. Masten*, 170 F.3d 790, 797 (7th Cir.1999).

■ The government submits that "applying the reasoning of [*United States v.*] *Lewis* [, 117 F.3d 980 (7th Cir.1997) ] and [*United States v.*] *Brown* [, 31 F.3d 484 (7th Cir.1994) ], that knowledge that the act of money laundering is illegal is not necessary for conviction, then one should not have to know that the activity being promoted, or from which the money is

derived, is illegal either." (Gov't.'s Reply Defs. Koons & Strickland's Mots. Limine Regarding Money Laundering at 3.) The money laundering statute itself leaves no room for doubt that the government must prove the defendant knew that the money or other property involved in the transaction represented the proceeds from an illegal activity. *See* 18 U.S.C. § 1956(a)(1) ("Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity ...."); *see also United States v. Polichemi*, 219 F.3d 698, 706 (7th Cir. 2000); *United States v. Jackson*, 935 F.2d 832, 838 (7th Cir.1991).

Moreover, the case law clearly establishes that the government must prove not only that a defendant knew that the property involved represented illegal proceeds but also the defendant intended to promote an unlawful activity. *See Masten*, 170 F.3d at 797; *Brown*, 31 F.3d at 492.[2] In *Brown*, the defendants were charged with money laundering in violation of Section 1956. They argued they lacked the knowledge required under § 1956 that their activities were unlawful. *Id.* at 490 n. 6. The court found "ample evidence," including a postal inspecter's testimony,

To sustain the charge of operating an illegal gambling business as charged in Count 2 of the Superseding Indictment, the government must prove the following essential elements beyond a reasonable doubt:

First: That a defendant conducted, financed, managed, supervised, directed or owned all or part of a gambling business in which five or more persons were involved in the operation of the business;

Second: That the gambling business was operated in violation of the laws of the State of Indiana; and

Third: That the gambling business was either in substantially continuous operation for more than 30 days, or, alternatively, had a gross revenue of $2,000 or more in any one day.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty of the charge of operating an illegal gambling business.

If, on the other hand, you find from your consideration of all of the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty of the charge of operating an illegal gambling business.

*See* 18 U.S.C. § 1955; *United States v. Cyprian*, 23 F.3d 1189, 1199 n. 14 (7th Cir.1994); *United States v. Balistrieri*, 779 F.2d 1191, 1210 (7th Cir.1985).

2. The statute reads in pertinent part:

Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity ... with the intent to promote the carrying on of specified unlawful activity ... [commits the offense of money laundering].... 18 U.S.C. § 1956(a)(1)(A)(i).

that they knew their activities were illegal. *Id.* The defendants also argued they lacked the specific intent required under § 1956. *Id.* The court rejected this argument, finding sufficient evidence to support their convictions. The court concluded the inspector's testimony "was needed to prove *knowledge* and *intent* with respect to the money laundering charge." *Id.* at 492 (emphasis added). As *Brown* indicates, to establish the offense of money laundering, the government must prove both the defendant's knowledge and intent.

*Lewis* does not hold to the contrary. Rather, it stands for the proposition that willfulness is not an element of the money laundering offense. *See, e.g., Lewis,* 117 F.3d at 984; *see also Brown,* 31 F.3d at 488. Nothing in the *Lewis* decision addresses a defendant's knowledge that the money or other property involved in the transaction represented the proceeds from an illegal activity or the defendant's intent to promote the carrying on of a specified unlawful activity.

To put it differently, the government must prove a defendant's intent on two levels: First, that a defendant *knew* the money or other property involved represented illegal proceeds; and, second, that the defendant *intended* to promote an unlawful activity. *See Masten,* 170 F.3d at 797; *Brown,* 31 F.3d at 492. The statute's language referring to specific knowledge and intent must have this meaning. Without such language, the offense would become a strict liability crime and the mere handling of money or other property representing illegal proceeds would subject a person to liability under the statute. For example, a bank employee who handled a financial transaction involving money from an illegal drug business and which transaction promoted that business would be liable for money laundering even though the employee was completely unaware that the money came from and went to an illegal drug business. The statute was not intended to reach such conduct. This distinction is especially important in a case of

this type which involves an underlying activity, gambling, which can be legal or illegal. If the government's mistaken construction of this statute were actually the law, pity the poor bank teller handling deposits and withdrawals for a registered pharmacist who dabbled in illegal drug sales out the back door of the pharmacy. If the teller knew that the pharmacist's monies came from drug sales, it would be irrelevant whether the teller knew of the illegal nature of the sales. Section 1956(a) is not such a strict liability statute.

■ Because the government must prove that a defendant knew that "the property involved ... represent[ed] the proceeds of some form of unlawful activity" and acted "with the intent to promote the carrying on of specified unlawful activity," a defendant's state of mind is relevant to the money laundering offense under 18 U.S.C. § 1956(a)(1)(A)(i). The offense is a specific intent crime. *See, e.g., United States v. Olaniyi–Oke,* 199 F.3d 767, 770 (5th Cir.1999); *Masten,* 170 F.3d at 797; *United States v. Emerson,* 128 F.3d 557, 561 (7th Cir.1997); *cf. United States v. Santos,* 20 F.3d 280, 284 n. 3 (7th Cir.1994) ("the money laundering statutes ... contain specific and detailed requirements concerning the defendant's intent and knowledge.")

■ Counts 4 through 9 allege that the Defendants "knowingly and willfully" engaged in money laundering to promote illegal gambling and, thus, over allege the *mens rea* of the offense charged. But the statute does not require that a defendant "knowingly and willfully" committed the money laundering offense. *See, e.g., Lewis,* 117 F.3d at 984. Use of terms "knowingly and willfully" are mere surplusage and not elements of the offense charged. They, therefore, will be disregarded. The government will not be required to prove that any Defendant knowingly and willfully committed the offenses charged in Counts 4 through 9. The jurors will be instructed

on the essential elements of the crime charged in these counts.[3]

## II. The Evidence At Issue

With its motion in limine the government seeks to prohibit the presentation of the following types of evidence: (1) evidence of a defendant's knowledge or intent regarding whether the business involved illegal gambling, (2) evidence of other jurisdictions' action regarding gambling, and (3) anecdotal opinion testimony of how the gambling devices owned and run by the defendants operate when that testimony is not supported by a foundation to support that opinion. The government expects that the defense will proffer evidence that their video gambling machines were tolerated by local enforcement and that the defendants believed engaging in a business based on those machines was legal. The government specifically mentions John Neal's acquittal of illegal gambling in Madison County[4] and Neal's replevin action in Delaware Circuit Court in which a Com-

missioner ordered that certain of the gambling machines be returned, finding they were not gambling devices. The government contends that such evidence is irrelevant.

Defendant Strickland indicates that she intends to present to the jury a defense to the illegal gambling and money laundering charges based on advice of counsel and reliance upon government officials. From her submissions[5] the court understands that she intends to offer evidence of the following: In 1995 Ms. Strickland purchased Muncie Coin from Michael Garrett. (Strickland "Aff." ¶ 2.) A significant percentage of Muncie Coin's inventory of coin machines was in video gaming devices that were placed throughout Delaware County, Indiana, and Mr. Garrett indicated that the machines were legal. (Id. ¶ 3.) Garrett had operated Muncie Coin for many years and was never prosecuted under state or federal law for illegal gambling. (Strickland's Resp. Govt.'s Mot. Limine at 2.)[6]

3. The court will give an instruction similar to the following:

To sustain the charge of money laundering as charged in Counts 4 through 9 of the Superseding Indictment, the government must prove the following essential elements beyond a reasonable doubt:

First, the defendant conducted or attempted to conduct a financial transaction;

Second, the property involved in the financial transaction involved the proceeds of the operation of an illegal gambling business;

Third, the defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity; and

Fourth, the defendant engaged in the financial transaction with the intent to promote the carrying on of the operation of an illegal gambling business.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty of the charge of money laundering.

If, on the other hand, you find from your consideration of all of the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find

the defendant not guilty of the charge of money laundering.
See, e.g., Masten, 170 F.3d at 797.

4. The court finds no other reference to Neal's acquittal in Madison County, or any other county, for that matter, in the parties' filings relative to the government's motion in limine. Neither Defendant Strickland nor Koons claims reliance on such an acquittal.

5. Whenever there is any inconsistency or conflict between statements between a purported "affidavit" offered by Ms. Strickland and representations in one of her briefs, the court accepts as true the version in the purported "affidavit". It must be noted, however, that none of the purported "affidavits" submitted by her qualify as an affidavit or as an unsworn declaration under 28 U.S.C. § 1746. Though they state that the declarant is "being duly sworn" none is notarized, states that the document is true and correct, or subjects the declarant to penalties of perjury. (See "Affidavit" of Vicky Strickland (Godsey), dated May 23, 2000; "Affidavit" of Michael J. Alexander, undated; "Affidavit" of Richard Reed, dated May 16, 2000.)

6. Though the pages of the response are not numbered, the court refers to the first page as page 1, the second page as page 2, and so on.

Before purchasing Muncie Coin, Ms. Strickland consulted with various unidentified individuals to learn whether the business was legal. She learned that in 1988 a Delaware County Circuit Court judge ruled the video gaming devices were not illegal. (Strickland's Resp. Govt.'s Mot. Limine at 4.) Ms. Strickland's submissions include what appears to be a copy of a preliminary prejudgment decision by Master Commissioner, Stan Wyrick, in the case of *John Neal v. City of Muncie, et al.*, Cause No. 18C01–8810–CP–190, in Delaware Circuit Court, which appears to be Neal's replevin action.[7] The Commissioner found that the video game machines at issue had "no bonus, free game or pay off reward for playing the game other than the winner can place his initials on the video screen on a temporary basis." (Findings of Fact No. 5.) He concluded that "the video machines are not a gambling device as defined by I.C. 35–45–5–1...." (Conclusions and Recommendations No. 1; Alexander "Aff." ¶ 7.) His findings were adopted by a judge who ordered prejudgment possession of the machines to John Neal.[8]

Also before purchasing Muncie Coin, Ms. Strickland consulted with Michael Alexander, an attorney and Delaware County Prosecutor from 1979 to 1989, and the attorney who had represented her father in the replevin action.[9] (Alexander "Aff." ¶¶ 2, 4; Strickland "Aff." ¶ 4; Strickland's Response Govt.'s Mot. Limine at 4.) He indicated to her "that he was familiar with the manner in which video gaming devices were utilized throughout Delaware County and ... with machines commonly known as 8–Liners and that in his opinion those

machines," (Strickland "Aff." ¶ 5; Alexander "Aff." ¶¶ 11, 20), and he understood that player had the opportunity to win money while playing the video gaming devices, (Alexander "Aff." ¶ 9). "He advised her that in his opinion, the games were games of skill rather than games of chance," (Strickland "Aff." ¶ 6); *see also* Alexander "Aff." ¶ 5; and, therefore, not illegal under Indiana law. (*See id.*) He cited cases and statutes when giving her this advice, (Strickland "Aff." ¶ 7; Alexander "Aff." ¶ 11; *see also* Strickland's Resp. Govt.'s Mot. Limine at 4), but indicated that "not all law enforcement officers shared his opinion as to the legality of video gaming devices." (Strickland "Aff." ¶ 8; *see also* Alexander "Aff." ¶ 11.) He told her "that if [she] or any of [her] customers were prosecuted he felt 'quite confident that there would be an acquittal.'" (Strickland "Aff." ¶ 8.) Based upon Mr. Alexander's advice as to the legality of the video gaming devices rented by Muncie Coin, Ms. Strickland purchased that business and would not have done so if she had not received his advice. (*Id.* ¶¶ 9, 15.)

Subsequently, law enforcement officers told Ms. Strickland that the Delaware County Sheriff believed the video gaming devices were illegal. (Strickland "Aff." ¶ 10; *see also* Richard Reed "Aff." ¶ 4 (stating that various members of the law enforcement community believed that video gaming devices were illegal).) She therefore removed from her customers the 8–Liner video gaming devices until their lawfulness could be determined. (Strickland "Aff." ¶ 10; Strickland's Resp. at 5.) She subsequently met with Mr. Alexander who indicated the only way to resolve the

---

7. John Neal is Vicky Strickland's father.

8. Ms. Strickland represents that she learned that "whenever machines had been seized by law enforcement agencies, they were returned without prosecution or comment." (Strickland's Resp. Govt.'s Mot. Limine at 4.) These law enforcement agencies included the state police, the Federal Bureau of Investigation ("FBI"), various unidentified prosecutors and other agencies. (*Id.*) Other than the seizure

of machines owned by John Neal which were the subject of his 1988 replevin action, Ms. Strickland makes no specific reference to the seizure of video gaming machines by law enforcement agencies.

9. Though it is unclear from the Defendant's submissions, the court presumes that when Ms. Strickland consulted Mr. Alexander he was no longer prosecutor.

issue was to put a few machines in circulation and have a trial and appeal, if necessary. (Strickland "Aff." ¶ 11.) He advised her that she had her customers "should do business as usual, i.e. the machines should be utilized in the manner generally used: individuals would pay money to obtain credits and if they had more credits at the end of their play they would be paid at the rate of five cents per credit." (Alexander "Aff." ¶ 14.) A limited number of machines were placed in service in the community, (Strickland "Aff." ¶ 11), machines were seized from Nancy and David Wilson, Ms. Strickland's customers, and the Wilsons and Ms. Strickland were charged in Delaware County Circuit Court with state criminal offenses relating to the possession, use and rental of video gaming devices. (*Id.*)

The Delaware County Prosecutor, Richard Reed,[10] prosecuted the Wilsons' case first. (Strickland "Aff." ¶ 12.) Evidence as to how the video gaming devices were used and the nature of the payoffs that were made was presented. (Alexander "Aff." ¶ 17; Reed "Aff." ¶ 6.) Stan Wyrick testified at trial that video gaming devices that "were *similar* to those which [Ms. Strickland] had rented to the Wilsons were not gambling devices under the statute." (Strickland "Aff." ¶ 12.) (Emphasis added). On September 30, 1997, the jury acquitted the Wilsons. (Strickland "Aff." ¶ 13; Alexander "Aff." ¶ 19.) Based upon discussions with the jurors, Mr. Reed reached the opinion that they believed the machines were games of skill and that further prosecutions were unwarranted. (Reed "Aff." ¶ 6.)

Shortly thereafter, Mr. Reed advised Ms. Strickland that the charges against her would be dropped. (Strickland "Aff." ¶ 13.) He advised her counsel, Mr. Alex-

ander, that " 'the jury had spoken,' " (Alexander "Aff." ¶ 19; *see also* Strickland "Aff." ¶ 13), that Ms. Strickland could "pick up" her machines, and that "as long as [he] was prosecutor the machines *would be deemed legal* and there would be no further prosecutions in Delaware County, Indiana." (Reed "Aff." ¶ 7 (emphasis added); *see also* Alexander "Aff." ¶ 19; Strickland "Aff." ¶ 13.)[11] Mr. Alexander relayed Mr. Reed's position to Ms. Strickland and advised her that, based on his interpretation of the law and in reliance upon Mr. Reed's judgment, "she could safely put video gaming devices back in circulation in Delaware County." (Alexander "Aff." ¶ 19.)

Thereafter, Mr. Reed met with members of the Delaware County Tavern Owners Association. He advised "all of the individuals present of my legal opinion that the machines were legal, that they were games of skill, that they were not illegal gambling devices under the law of Indiana and that no further prosecutions would be maintained." (Reed "Aff." ¶ 8; *see also* Strickland "Aff." ¶ 13); Strickland's Addt'l Submission Opp'n Govt.'s Mot. Limine at 3 (emphasizing that Mr. Reed did not merely state to the Association that he would not prosecute owners with video gaming devices.) Mr. Reed stated that the owners could act in reliance on his opinion, (Reed "Aff." ¶ 8), and indicated they "were free to place machines throughout the county" to customers. (Strickland "Aff." ¶ 13.) He also was reported in the newspaper as stating that "the jury had spoken and that in his opinion the machines were legal." (Strickland's Addt'l Submission Opp'n Govt.'s Mot. Limine at 2; *see also id.* at 3.)

Ms. Strickland met with Mr. Alexander and again was advised of his opinion the machines did not violate state law and she

---

**10.** Mr. Reed was elected in 1991 and currently is prosecutor. (Reed "Aff." ¶ 2.)

**11.** Ms. Strickland claims that this was not prosecutorial forbearance or indifference but represented his legal judgment that under the facts and the law, "video gaming devices of

the type Ms. Strickland's customers were renting were legal." (Strickland's Resp. at 6.) She also claims that Mr. Reed advised her and others "that the machines could be put back in the community." (Strickland's Resp. at 6.)

had the right to put them back in the community. (Strickland "Aff." ¶ 14; Strickland's Resp. at 6–7.) She would not have put the video gaming devices back into the community had Mr. Reed not indicated that he believed they were legal and had Mr. Alexander not reaffirmed his legal opinion regarding their legality. (Strickland "Aff." ¶ 16.)

Defendant Aaron Koons is less specific regarding the particular evidence he intends to offer at trial. He first states that he "is not required at this juncture to detail the evidence he intends to present 'in support of a defense that he did not know the source of the proceeds was illegal.'" (Reply to Govt.'s Resp. Mot. Limine at 3.) But he continues by stating that evidence as to his knowledge "could include discussions with 'Michael Alexander' and/or others which occurred prior to that time, including public officials." (*Id.*) He argues that though he is charged with offenses committed in 1995, evidence of verdicts in 1997 is relevant to establish the continuation of a conspiracy. (*Id.*)

### III. The Admissibility of the Evidence

Defendant Strickland argues that motions in limine are disfavored in the Seventh Circuit. (Strickland's Resp. Govt.'s Mot. Limine at 10.) She does not, however, cite any decision from the Seventh Circuit to support that argument. The decision she does cite, *United States v. Jackson*, No. 95 CR 155, 1995 WL 337067, at *1 (N.D.Ill. May 31, 1995), is a district court decision from the Northern District of Illinois and not binding on this court. The case *Jackson* relies upon, *Hawthorne Partners v. AT & T Tech.*, 831 F.Supp. 1398, 1400 (N.D.Ill.1993), does not state that "[m]otions in limine are disfavored".

In any event, Rule 12(b) of the Federal Rules of Criminal Procedure states: "Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion." Fed.R.Crim.P. 12(b). The rule thus expresses a preference for resolving issues in advance of trial when they may be so resolved. *See United States v. Levin*, 973 F.2d 463, 467, 470 (6th Cir.1992) (stating that Rule 12 "was written to encourage the making of motions prior to trial"). This court favors pretrial resolution of issues that might otherwise delay the progress of trial. That is, at least in part, why the pretrial scheduling orders in this case have been issued. Consequently, regardless of whether such motions are disfavored, they are permitted and the court will address them, including those made by various defendants.

■■■ Defendant Strickland also argues that a defendant has a due process right to present a defense and implies that any evidence she offers as to a defense must be admitted at trial. "The right to present a defense is based on a criminal defendant's right, under the Sixth and Fourteenth Amendments, to compulsory process for obtaining witnesses." *Smith v. Kolb*, 950 F.2d 437, 440 (7th Cir.1991) (citation omitted). The right to present defense witnesses, however, is not absolute. *See Taylor v. Illinois*, 484 U.S. 400, 410, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) ("The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible...."); *United States v. Bautista*, 145 F.3d 1140, 1151–52 (10th Cir.1998), *cert. denied*, 525 U.S. 911, 119 S.Ct. 255, 142 L.Ed.2d 210 (1998); *Smith*, 950 F.2d at 440. Ms. Strickland does not have the absolute right to present any and all evidence she may offer. Her evidence, like the government's, must be relevant to the issues on trial and otherwise admissible.

### A. Advice of Counsel Defense

■■■ Ms. Strickland indicates her intention to present the advice of counsel defense. This defense is available only as against specific intent crimes. *See United States v. Powell*, 513 F.2d 1249, 1251 (8th Cir.1975) (holding advice of counsel no defense to crime of unlawful firearms dealing under § 922 or possession of firearms as a felon because defendant's specific intent or

knowledge was not an essential element of crimes); *United States v. Dyer*, 750 F.Supp. 1278, 1293 (E.D.Va.1990) (stating "[i]n general, an advice of counsel defense applies only where the violation requires proof of specific intent, that is, proof that a defendant has actual knowledge that his conduct is illegal."); *see also United States v. Soares*, 998 F.2d 671, 673–74 (9th Cir. 1993) (affirming district court's decision that offense under 18 U.S.C. § 1954 was not a specific intent crime and therefore prevented defendant from offering advice of counsel defense). The reason for this is that the defense is relevant to negate proof of a defendant's intent to violate the law, and intent is an essential element only in specific intent crimes. *See, e.g., United States v. Carr*, 740 F.2d 339, 346 (5th Cir.1984). Because the offense of operating an illegal gambling business is a general intent crime, advice of counsel is unavailable as a defense to that crime. The advice of counsel defense, however, may be raised as a defense to the money laundering charges as money laundering is a specific intent crime. Thus, evidence that Ms. Strickland sought and obtained advice from attorney Michael Alexander as to the legality of the video gaming devices rented by Muncie Coin is admissible as a defense to the money laundering offenses with which she is charged in Counts 6 through 9, provided the advice was obtained prior to the alleged date on which the specific financial transactions occurred.[12] Ms. Strickland, however, may not raise an advice of counsel defense as against the operation of an illegal gambling charge in Count 2.

To establish an advice of counsel defense, a defendant must show that: "(1) before taking action, (2)[s]he in good faith sought the advice of an attorney whom [s]he considered competent, (3) for the purpose of securing advice on the lawfulness of [her] possible future conduct, (4) and made a full and accurate report to [her] attorney of all material facts which the defendant knew, (5) and acted strictly in accordance with the advice of [her] attorney who had been given a full report." *Liss v. United States*, 915 F.2d 287, 291 (7th Cir.1990) (citation omitted). If supported by the evidence at trial, the court will give an instruction to the jury on the elements of the advice of counsel defense.[13]

It must be noted that Ms. Strickland in a footnote refers to Prosecutor Reed's opinion that the video gaming devices were legal as "advice of a lawyer." (Strickland's Resp. Govt.'s Mot. Limine at 16.) However, in a subsequently filed brief, she argues that "the counsel upon whom he (sic) relied is Mr. Michael J. Alexander...." (Addt'l

12. Because there has been no showing that Mr. Alexander was a public official at any time he was consulted by Ms. Strickland, or for that matter, Mr. Koons, evidence of advice given to them by him could not be considered under the reliance on public authority defense discussed *infra*.

13. An example of the instruction the court may give follows:

Good faith is a complete defense to the money laundering charges since good faith on the part of a defendant is inconsistent with the intent to promote the carrying on of the operation of an illegal gambling business.

Defendant Strickland claims that she is not guilty of the offenses of money laundering charged in Counts 6 through 9 because she acted on the basis of advice from her attorney. If the defendant before taking any action sought the advice of her attorney whom she considered competent, in good faith and for the purpose of securing advice on the lawfulness of her possible future conduct, and made a full and accurate report to her attorney of all material facts of which she had the means of knowledge, and acted strictly in accordance with the advice of her attorney given following his full report, then the defendant would not be acting with the intent to promote the carrying on of the operation of an illegal gambling business.

Whether Defendant Strickland acted in good faith for the purpose of seeking guidance as to questions about which she was in doubt, and whether she acted strictly in accordance with the advice received, are questions for you to determine.

*See generally United States v. Cheek*, 3 F.3d 1057, 1062–63 (7th Cir.1993); *United States v. Brimberry*, 961 F.2d 1286, 1290 n. 2 (7th Cir.1992).

Submission Opp'n Prosecution's Mot. Limine Regarding Intent at 16.) Thus, it is not clear whether Ms. Strickland intends to assert the advice of counsel defense based on statements made by Prosecutor Reed. But to the extent she does, Prosecutor Reed's statements would not give rise to that defense. First, there is no indication of an attorney-client relationship between Ms. Strickland and Prosecutor Reed. *See United States v. Goulding,* 26 F.3d 656, 668 (7th Cir.1994) (holding evidence did not support giving of advice of counsel instruction where, among other things, "Ushijima [the attorney] testified that he was not an attorney for [the defendant]"); *United States v. Carr,* 740 F.2d 339, 347 (5th Cir.1984) ("For such a [advice of counsel] defense to be permitted, however, there must be at least some evidence that the attorney advised the defendant as his counsel").

Furthermore, as stated *supra,* the advice of counsel defense is available as a defense to specific intent crimes and is unavailable as a defense to general intent crimes. Ms. Strickland is charged with both types of crimes: the general intent crime of operating an illegal gambling business and the specific intent crimes of money laundering. Though the latter crime is alleged to have been committed through the date of the indictment, the indictment charges that the money laundering offenses were completed in February 1997. Reed's opinion was not given until after the Wilsons' acquittal on September 30, 1997. Thus, Ms. Strickland cannot claim advice of counsel with respect to Reed's statements following the Wilsons' trial.

**B. Reliance On Public Authority**

The court understands the government as challenging whether the defendants may assert the affirmative defense known as reliance on public authority or entrapment by estoppel, *see, e.g., Cox v. Louisi-*

*ana,* 379 U.S. 559, 569–71, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965); *United States v. Rector,* 111 F.3d 503, 505–07 (7th Cir.1997), *overruled on other grounds by United States v. Wilson,* 169 F.3d 418 (7th Cir. 1999). This defense is "rarely available." *Rector,* 111 F.3d at 506. In the Seventh Circuit, the reliance on public authority defense requires that:

> "the one misleading the defendant be an official of the [government]; that he actively mislead the defendant; and that the defendant's reliance be actual and reasonable in light of the identity of the official, the point of law represented, and the substance of the misrepresentation."

*Rector,* 111 F.3d at 506 (quoting *United States v. Howell,* 37 F.3d 1197, 1204 (7th Cir.1994)). The government argues that the defense is unavailable because the defendants claim to have been misled by state or local officials, the defendants' reliance was unreasonable, and they acted for a period of time before obtaining any advice from a public official.

▋ The first issue for the court to consider is whether the defense is available as a defense to general intent crimes, specific intent crimes, or both. At least one court has recognized that the defense "is independent of the element of intent." *United States v. Conley,* 859 F.Supp. 909, 928 (W.D.Pa.1994). The *Conley* court held the defense was applicable to general intent crimes, specifically the offense of participating in an illegal gambling business in violation of 18 U.S.C. § 1955. *Id.* at 928– 29. Dicta in the decision suggests that the defense is inapplicable to specific intent crimes. *See id.* at 929. This is so, the court explained, because subjective good faith is a complete defense to such crimes. *Id.* This court disagrees and concludes that the defense may be raised as against both general intent crimes and specific intent crimes.[14] *See, e.g., United States v. Ether-*

---

14. The government concedes as much. (*See* Govt.'s Reply Def. Strickland's Resp. Mot. Limine at 13 ("In a specific intent crime, evi-

dence of the advice of a public official is a fact question because ... it goes to an element of the offense-the defendant's specific

*idge,* 932 F.2d 318, 321 (4th Cir.1991) (stating the defendant could not raise the defense because, *inter alia,* "knowledge of one's status as a convicted felon is not an element of the offense of receiving firearms"); *United States v. Levin,* 973 F.2d 463, 468–70 (6th Cir.1992) (affirming district court's dismissal of counts where defendant raised entrapment by estoppel defense as the government was unable to prove the requisite criminal intent). The defense is applicable as against specific intent crimes because it implicates the intent element. *See id.* Even if the reliance on public authority defense were unavailable as to specific intent crimes, evidence that a defendant reasonably relied on advice from a public official regarding the legality of the defendant's conduct may be admissible as to the defendant's intent. *See, e.g., Conley,* 859 F.Supp. at 929. This court's view is that it would be fundamentally unfair to permit criminal conviction for conduct the appropriate authorities condoned or encouraged by advice of legality.

■ The second issue is whether the reliance on public authority defense may be raised as a defense to federal charges when a defendant claims he or she was misled by state or local officials. The weight of authority holds that it is not. *See, e.g., United States v. Funches,* 135 F.3d 1405, 1407–08 (11th Cir.), *cert. denied,* 524 U.S. 962, 118 S.Ct. 2389, 141 L.Ed.2d 754 (1998); *Rector,* 111 F.3d at 505–07; *United States v. Caron,* 64 F.3d 713, 714–17 (1st Cir.1995), *adhered to in relevant part on rehearing,* 77 F.3d 1 (1st Cir.1996); *Etheridge,* 932 F.2d at 320–22 (rejecting application of defense to § 922 where defendant claimed to rely on advice of state trial judge); *United States v. Spires,* 79 F.3d 464, 466–67 (5th Cir.1996); *United States v. Hurst,* 951 F.2d 1490, 1499 (6th Cir.1991) (holding entrapment by estoppel unavailable as defense to illegal

gambling charge under § 1955 where defendants claimed reliance on state officials' advice about state law); *United States v. Achter,* 52 F.3d 753, 755 (8th Cir.1995); *United States v. Mack,* 164 F.3d 467, 474 (9th Cir.1999).

The defendants in *Hurst,* like most of the defendants in the instant case, were charged with violations of 18 U.S.C. § 1955. They raised the defense of entrapment by estoppel based on alleged statements and actions of state officials. *See Hurst,* 951 F.2d at 1499. The Sixth Circuit affirmed the district court's refusal to instruct the jury on the defense, finding the defense unavailable. It's reasoning was two-fold. First, there was no evidence the defendants were told by state officials that their conduct was legal. *Id.* Moreover, "the statements allegedly relied upon were made by state officials relating to state law, while the defendants were charged with violations of federal law." *Id.* Acknowledging that its ruling seemed somewhat harsh since a violation of state law is an element of Section 1955, the *Hurst* court noted:

> One of the purposes of section 1955 was to aid in the enforcement of state gambling laws where state enforcement was disabled by corruption of state officials. Allowing a state official's alleged complicity in illegal activities to void the convictions here would violate the intent of Congress in enacting section 1955 and distort the clear due process doctrine set forth in [Supreme Court cases such as *Cox* discussing reliance on public authority].

*Hurst,* 951 F.2d at 1499–1500 (citation omitted); *see also United States v. Boyd,* 149 F.3d 1062, 1066 (10th Cir.1998) (quoting congressional findings that "illegal gambling enterprises are facilitated by the corruption and bribery of State and local officials or employees responsible for the execution of or enforcement of criminal

intent to commit a crime."; "the reliance on public official defense is applicable to general

intent crimes").)

laws"), *cert. denied,* 526 U.S. 1147, 119 S.Ct. 2024, 143 L.Ed.2d 1035 (1999).

One district court has stated that "the Due Process clause may ... invalidate certain prosecutions under Section 1955 solely on the basis of reliance upon advice from state or local officials." *United States v. Conley,* 859 F.Supp. 909, 932 (W.D.Pa. 1994). Though the *Conley* court was willing to allow the defense of reliance on public authority to be raised against federal crimes where a defendant relied on advice from a state official, the defendants in that case were not allowed to assert the defense. The court found that the state officials at most had tolerated the defendants' conduct and had given no advice; it therefore held the defendants were not entitled to assert the estoppel defense. *See Conley,* 859 F.Supp. at 933–936. The court is unaware of any published decision in which a defendant charged with either operation of an illegal gambling business in violation of Section 1955 or money laundering in violation of Section 1956 was allowed to assert the reliance on public authority defense based upon advice given by state or local officials.

In the court's view, *Hurst* and the other decisions requiring reliance on advice of a federal official were correctly decided. If a defendant were permitted to raise reliance on public authority based on a statement by a state or local official as a defense to federal charges, then a statement of a single state or local individual could bind not only other state authorities but also, the federal government. This would occur even though the state or local individual had no right or authority to bind the federal government. Such a result would frustrate legislative intent behind Section 1955 and would hinder rather than aid the enforcement of state gambling laws. In addition, to permit the defense to be based

upon a state official's advice would allow corrupt state or local authorities to circumvent violations of federal law.[15] If the court were to hold that statements made by state officials could create a reliance upon public authority defense to federal charges, it would be going against the weight of authority, including Seventh Circuit authority. *See, e.g., Rector,* 111 F.3d at 505–07. The court therefore concludes that the reliance on public authority defense may not be raised as a defense to federal charges, specifically including the operation of an illegal gambling business and money laundering charges in this case, when the claimed reliance is upon a statement or conduct by a state or local official rather than an appropriate federal official.[16]

Even assuming that a defendant who claims reliance on a statement by a state or local official could assert the reliance on public authority defense as a defense to the operation of an illegal gambling business and money laundering offenses, the question would become whether the Defendants have made a sufficient showing to raise that defense here.

### 1. Representation by Public Official

■ The government claims that the reliance on public authority is not available to either Ms. Strickland or Mr. Koons because the money laundering transactions with which they are charged occurred before Prosecutor Reed stated that the gambling devices were legal. Reed claims to have made such a statement after the trial of Mr. and Mrs. Wilson; and the verdict in the case of *State of Indiana v. David and Nancy Wilson* was returned on September 30, 1997. Neither Ms. Strickland nor Mr. Koons could assert reliance on any statement made by Reed which was made after

---

**15.** It is noted, however, there has been no allegation of corruption by state or local officials in the instant case.

**16.** Furthermore, even if the court were to allow the defense where the reliance is upon state or local officials, given the numerous failings in the Defendants' submissions, *see infra,* they would not be entitled to present evidence on a reliance on public authority defense.

the occurrence of the specific offenses with which they are charged.

Mr. Koons is charged with money laundering offenses alleged to have occurred on or about May 1995; he, therefore, cannot claim reliance on public authority or any other type of reliance on Reed's statements regarding the legality of video gaming devices which were made after the Wilsons' trial. Similarly, he cannot claim reliance on public authority based on any statement or conduct of any public official which occurred after on or about May 1995.

The money laundering offenses with which Ms. Strickland is charged also allegedly occurred before Reed's post-Wilson trial statements. She, therefore, cannot claim reliance on public authority based on those statements as a defense to the money laundering charges. Count 2 alleges that Ms. Strickland operated an illegal gambling business from January 1990 to the date of the indictment. Thus, the court will consider, based on her proffer, whether she could assert a reliance on public authority defense based on Reed's statements after the Wilson trial as against the charge in Count 2.[17]

Even if Ms. Strickland could assert reliance on Reed's statements made after the Wilson trial, her reliance would have to have been in good faith. Any claim that it was in good faith would be suspect since she already had put the devices in operation before Reed opined as to their legality. *See Rector,* 111 F.3d at 507 (indicating that defendant, a convicted felon, first purchased weapons before the time he claimed to have a conversation with town marshal who allegedly advices him he could own firearms which rendered disingenuous his claim of good faith reliance).

But Ms. Strickland faces another hurdle. It is not clear that Defendant Strickland was advised directly by Reed that he believed the video gaming devices were legal. One court has held that the reliance on public authority defense arises only when a government official makes a statement "directly to the defendant, not to others." *United States v. Eaton,* 179 F.3d 1328, 1332 (11th Cir.1999). The court reasoned that reliance on statements made to others is objectively unreasonable. *Id.* at n. 6. The Federal Criminal Jury Instruction of the Seventh Circuit regarding advice of public authority suggests that the official must make the statement directly to the defendant. *See* FEDERAL CRIMINAL JURY INSTRUCTIONS OF THE SEVENTH CIRCUIT § 6.07 (1999) ("the defendant is told this by an official of the [United States] government").[18] Ms. Strickland states that Reed advised her the charges against her would be dropped, but neither she nor Reed states that he directly advised her that the devices were legal. Rather, the "affidavits" offered by Ms. Strickland demonstrate that such advice was given by Reed to Alexander and then conveyed to her by Alexander. Under *Eaton,* Ms. Strickland's reliance on Reed's statements to Alexander would be objectively unreasonable. The defense submissions also show that Reed expressed his opinion regarding the legality of video gaming devices at a meeting of the Delaware County Tavern Owners Association, but there is no indication that Ms. Strickland was present at that meeting. Absent such a showing, any reliance on Reed's statements made during the tavern owners' meeting would be objectively unreasonable under *Eaton.* Any reliance on statements attributed to Reed in the newspaper likewise would be objectively unreasonable.

---

17. She could not offer evidence of Reed's statements following the Wilson trial as evidence of her state of mind relative to the offense of operating an illegal gambling business because state of mind is not relevant under Section 1955.

18. The pattern instructions do not have the force of law in the Seventh Circuit, but the Seventh Circuit Judicial Counsel has approved the instructions in principle and authorized their publication for use in the Seventh Circuit.

Moreover, having reviewed the "affidavits" presented by Ms. Strickland as well as her attorney's proffer and arguments, the court concludes that the Prosecutor Reed's statements as to the legality of the video gaming devices are as a matter of law insufficient to give rise to the entrapment by estoppel defense. Despite Ms. Strickland's characterizations and Reed's own assertions to the contrary, Reed's opinion is nothing more than prosecutorial forbearance. (*See, e.g.,* Reed "Aff." ¶ 7 (stating that "so long as I was prosecutor the machines would be deemed legal and there would be no further prosecutions in Delaware County, Indiana")). The mere failure to enforce the law is insufficient to establish the defense of reliance on public authority. *See United States v. Hurst,* 951 F.2d 1490, 1499 (6th Cir.1991). The submissions also fail to establish that the dismissal of the criminal charges against Ms. Strickland and return of her video gaming devices were anything other than prosecutorial forbearance.[19] In effect, Reed just threw in the towel after one unsuccessful prosecution. It is the equivalent of a prosecutor declaring drug distribution legal in a jurisdiction after losing a strong dealing case. Reed's statements fall short of an unequivocal interpretation of the legality of those machines. The court therefore concludes, based on Defendant Strickland's submissions, that as a matter of law she has not made a sufficient showing to raise the reliance on public authority defense based on Reed's statements made following the Wilson trial as a defense to any charge against her.

**2. Defendants' Awareness of Other Events**

■■■■■ Ms. Strickland suggests reliance on the nonprosecution of Muncie Coin's previous owner, Mr. Garrett. Garrett's nonprosecution is entirely irrelevant with regard to an entrapment by estoppel defense. First, there is no showing of active

misleading by a government official. Further, the decision whether to prosecute an individual is highly discretionary. An individual may be guilty of violating the law, but a prosecutor may choose not to prosecute him for any number of reasons that have no bearing on the legality of the individual's conduct. Thus, any reliance on Garrett's nonprosecution cannot as a matter of law have been objectively reasonable. Evidence of Ms. Strickland's knowledge of Mr. Garrett's nonprosecution may be relevant as to her state of mind regarding the money laundering offenses under Section 1956, however, to the extent she learned things about his operation of the business which led her to believe that operation of it in the manner she did was legal.

Ms. Strickland also claims reliance on a 1988 ruling by a Delaware County judge that the video gaming devices were not illegal and the return of John Neal's machines in the replevin action. Reliance on the judge's ruling and return of Neal's machines would not be objectively reasonable. The ruling was a preliminary prejudgment ruling as to the possession of Neal's machines and not a final judgment. Moreover, the ruling is from a circuit court judge rather than an Indiana appellate court or Indiana Supreme Court. A decision of an Indiana trial court is not binding upon another trial court, *see Indiana Dept. of Natural Resources v. United Minerals, Inc.,* 686 N.E.2d 851, 857 (Ind.Ct.App. 1997), *trans. denied*; and, a trial court's conclusion of law which is not appealed is not binding on the appellate court, *see id.* at 857 & n. 1 (admonishing counsel that it is inappropriate to cite trial court decisions as precedent). Reliance on the jury's acquittal of the Wilsons faces similar hurdles of reasonableness. The jury's verdict would not bind any other Indiana trial court. Furthermore, neither the jury's verdict in the Wilson criminal trial nor the

---

**19.** Evidence of these events would be inadmissible to prove Ms. Strickland's state of mind with respect to the money laundering offenses which because the offenses are alleged to have occurred long before these events.

judge's preliminary ruling in the replevin action seems to constitute active misleading by a government official, which is required for the entrapment by estoppel defense.

Moreover, the judge's ruling in the 1988 replevin action as to the legality of the video game machines in that case appear irrelevant to any Defendant's knowledge or intent in the instant case. The court's conclusion on prejudgment possession of machines in the replevin action that the video gaming machines were not gambling devices under Indiana law was based on the finding that the games had no pay off reward. In contrast, in the instant case, the government's expert witness submissions indicate that the video game devices at issue do have pay off rewards, including "knock off" switches to allow the player to be compensated for accumulated credits and remove the accumulated credits from the device's video display meter. Because of this significant difference, the judge's ruling in the replevin action is be irrelevant, unless a showing were made that the devices at issue in that case and in the instant case are similar.[20]

It should be noted that Defendant Strickland raises a few arguments relating to Indiana law. She first argues that a person violates the law only if conduct is done "knowingly and intentionally". The court understands Ms. Strickland as referring to the Indiana illegal gambling statutes. For example,

[a] person who knowingly or intentionally ... (3) maintains, in a place accessible to the public, slot machines, one-ball machines or variants thereof, pinball machines that award anything other than an immediate and unrecorded right of replay ... commits professional gambling, a Class D felony.

IND.CODE § 35–45–5–3(3). In addition, with a few limited exceptions not applicable here:

a person who: (1) knowingly or intentionally owns, manufactures, possesses, buys, sells, rents, leases, repairs, or transports a gambling device, or offers or solicits an interest in a gambling device; ... commits promoting professional gambling, a Class D felony.

IND.CODE § 35–45–5–4(a)(1). The case law interprets "knowing and intentionally" in these provisions as pertaining to the operation of a gambling device rather than knowledge or intent to violate a specific statute. *See Matter of Property Located at Marriott Inn, 505 Marriott Drive, Clarksville, Ind.*, 456 N.E.2d 444, 447 (Ind. Ct.App.1983) (rejecting petitioners' argument that their operation of gambling machine was not knowing or intentional where they consulted law enforcement officials prior to its installation and revealed manner in which machine was operated).

Ms. Strickland also argues that a reasonable mistake of fact is a defense under Indiana law. Indiana Code § 35–41–3–7 sets forth a mistake of fact defense: "[i]t is a defense that the person who engaged in the prohibited conduct was reasonably mistaken about a matter of fact, if the mistake negates the culpability required for commission of the offense." *See also Wrinkles v. State*, 690 N.E.2d 1156, 1162 (Ind.1997), *cert. denied sub nom. Wrinkles v. Indiana*, 525 U.S. 861, 119 S.Ct. 148, 142 L.Ed.2d 121 (1998). However, a mistake as to whether under Indiana law the video gaming devices were legal or the gambling business was illegal would constitute a mistake of law rather than a mistake of fact. As such, the mistake of fact defense would be unavailable.[21]

**20.** It should be noted that evidence of the Wilsons' acquittal in September 1997 is inadmissible to prove either Strickland's or Koon's state of mind as to the money laundering offenses charged against them. As stated, the specific transactions with which they are charged allegedly occurred before the Wilsons' trial; thus, the Wilsons' acquittal is entirely irrelevant to Strickland's or Koon's state of mind at the time of the alleged commission of the money laundering offenses charged.

**21.** Defendant Strickland claims that the government will suggest that she acted indiffer-

As for Defendant Koons, any evidence he would offer would be subject to the same analysis as that offered by Defendant Strickland. He does reference discussions with "Michael Alexander and/or others," and any such discussions may be admissible and relevant as to his state of mind, provided the discussions occurred prior to the time he is alleged to have committed the offenses with which he is charged. There also is the possibility that evidence of discussions with Michael Alexander, an attorney, could support an advice of counsel defense.

The evidence the Defendants have proffered that they intend to offer is as a matter of law insufficient to raise an entrapment by estoppel defense. But Ms. Strickland has made a sufficient showing to raise the advice of counsel defense as against the money laundering charges, and evidence of Mr. Garrett's nonprosecution is relevant and admissible as to her state of mind as to the money laundering charges. Defendant Koons possibly may raise an advice of counsel defense and present evidence of discussions with Mr. Alexander and others to establish his state of mind relative to the money laundering charges.

### Summary Conclusion

Accordingly, the government's motion in limine is **DENIED** with respect to evidence that Ms. Strickland sought and obtained the advice of counsel as to the legality of the video gaming devices and evidence of her knowledge of Mr. Garrett's nonprosecution as well as evidence of Defendant's Koons discussions with "Michael Alexander and/or others," provided the discussions occurred prior to the financial transactions with which he is alleged to have been involved. The motion in limine is **SUSTAINED** in all other respects regarding evidence of a defendant's knowledge or intent regarding whether the business at issue involved illegal gambling and evidence of other jurisdictions' actions regarding gambling: This specifically includes Prosecutor Reed's statements regarding the legality of the video gaming devices made after the Wilsons' trial, John Neal's 1988 replevin action, the Wilsons' acquittal, the return of Ms. Strickland's machines after the Wilsons' trial and the fact that the criminal charges against her were dismissed. Before a Defendant, defense counsel, or any defense witness may make reference to these matters in the presence of the jury, the Defendant must seek reconsideration of this ruling outside the presence and hearing of the jury.

## IV. Lay Opinion Testimony Regarding The Gambling Devices

The Indiana statutes allegedly violated by the gambling business in the instant case define "gambling" as "risking money or other property for gain, contingent in whole or in part, upon lot, chance, or the operation of a gambling device. . . ." IND. CODE § 35–45–5–1. "Bona fide contests of skill, speed, strength or endurance" are expressly excluded from this definition. IND.CODE § 35–45–5–1(1).

The government intends to offer expert testimony that the gambling devices owned and operated by the defendants, when operated on their preprogrammed cycles, are pure games of chance. The government states that many of the gambling machines involved in this case have buttons that allow the player to stop the video images before their preprogrammed cycle. The government anticipates offering testimony from one of its purported experts, Doug Dunlop, a forensic examiner with the Federal Bureau of Investigation, that the player's perceived ability to control the outcome through the stop button is illusory. Various disputes raised by the Defendants about this evidence will be addressed in a separate entry.

ently to the illegality of her conduct. (Strickland's Resp. Govt.'s Mot. Limine at 12.) If the government were to make such an argument, it would open the door to evidence of what Ms. Strickland did to determine whether her conduct was legal.

The government expects that the defendants will offer testimony of individuals who claim to be able to affect the outcome of the gambling machines through the stop buttons. It argues that unless the opinions of the witnesses in this regard are supported by a foundation for their perception that they can affect the outcome of the game, their testimony would not be rationally based nor helpful to the trier of fact.

The federal rules of evidence limit opinion testimony of lay witnesses to opinions that are "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." FED.R.EVID. 701. "Rationally based" means that the opinion is grounded in the witness' personal knowledge. *See United States v. Saulter,* 60 F.3d 270, 276 (7th Cir.1995). In addressing the admissibility of lay opinion testimony, the Seventh Circuit observed that:

> Rule 701 places great reliance on a party's ability to cross-examine an opponent's witness and present any weaknesses in the witness's testimony to the trier of fact.... "[T]he trier of fact also should generally be depended upon to give whatever weight or credibility to the witness' opinion as may be due."

*United States v. Allen,* 10 F.3d 405, 414 (7th Cir.1993) (quoting 2 JACK B. WEINSTEIN AND MARGARET BERGER, WEINSTEIN'S EVIDENCE ¶ 701[02], at 701–32 (1993)).

The evidence mentioned in the government's motion and the response does present concerns about whether any such lay opinion testimony offered by the defendants would be grounded on the witness's personal knowledge. It sounds as if it may be speculative and anecdotal rather than rationally based. Because of that potential and to prevent the admission of non-rationally based opinions, the court will **SUSTAIN** the government's motion in limine for the present. The Defendants are required to make a proffer outside the presence of the jury before reference may be made to lay opinion testimony regarding the witness's ability to affect the outcome of the gambling machines to allow the court to determine whether a rational basis for the witness's opinion. If there is a rational basis for the opinions, and if they would be helpful to the jury, they may be allowed.

## V. Conclusion

For the reasons stated, the government's motion in limine is **DENIED** with respect to evidence that Ms. Strickland sought and obtained the advice of counsel as to the legality of the video gaming devices, evidence of her knowledge of Mr. Garrett's nonprosecution, as well as evidence of Defendant's Koons discussions with "Michael Alexander and/or others," provided the discussions occurred prior to the financial transactions with which he is alleged to have been involved. The motion in limine is **SUSTAINED** in all other respects regarding evidence of a defendant's knowledge or intent regarding whether the business at issue involved illegal gambling and evidence of other jurisdictions' actions regarding gambling as well as with respect to lay opinion testimony of how the gambling devices owned and run by the defendants operate: This specifically includes Prosecutor Reed's statements made after the Wilsons' trial regarding the legality of the video gaming devices, John Neal's 1988 replevin action, the Wilsons' acquittal, the return of Ms. Strickland's machines after the Wilsons' trial and the fact that the criminal charges against her were dismissed.

Before the Defendants, their counsel or witnesses may make any reference to lay opinion testimony regarding a witness's ability to affect the outcome of the gambling devices, the Defendants must make a proffer outside the presence of the jury to allow the court to determine whether there is a rational basis for the witness's opinion.

This ruling may be reconsidered as appropriate throughout the course of trial. No Defendant, counsel for a Defendant or

any defense witness may make reference to this motion or to any matter as to which this motion has been sustained in the presence of the jury or prospective jurors, unless the Defendant firsts seeks reconsideration of this ruling outside the jurors' presence and hearing.

ALL OF WHICH IS ORDERED this 1st day of September 2000.